Glen R. Stuart (Pa. ID No. 41302)
Franco A. Corrado (Pa. ID No. 91436)
Karl Schweitzer (Pa. ID No. 312028)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
215.963.5000 (phone)
215.963.5001 (fax)
glen.stuart@morganlewis.com
franco.corrado@morganlewis.com
karl.schweitzer@morganlewis.com

*Attorneys for Plaintiffs Servis One, Inc.,*
*d/b/a BSI Financial Services, Inc.,*
*BSI Financial Holdings, Inc., Entra Solutions Pvt. Ltd.,*
*and Gagan Sharma*

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERVIS ONE, INC., D/B/A BSI FINANCIAL SERVICES, INC., BSI FINANCIAL HOLDINGS, INC., ENTRA SOLUTIONS PVT. LTD. and GAGAN SHARMA,<br><br>*Plaintiffs,*<br><br>v.<br><br>OKS GROUP, LLC, OKS GROUP INTERNATIONAL PVT. LTD., and VINIT KHANNA,<br><br>*Defendants.* | Civil Action No.<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Servis One, Inc., d/b/a BSI Financial Services, Inc. ("BSI"), BSI Financial Holdings, Inc., Entra Solutions Pvt. Ltd. ("ESPL"), and Gagan Sharma (collectively, "BSI Parties"), for their complaint, upon knowledge as to their own acts and information and belief as to the acts of all others, seek to enforce a settlement agreement entered by and between the parties to this action and in support thereof allege as follows:

## NATURE OF ACTION

1.      This is the second action that BSI and Gagan Sharma have been forced to bring against OKS Group, LLC ("OKS"), its CEO, Vinit Khanna, and OKS Group International Pvt. Ltd. (collectively, the "OKS Parties") to enforce a settlement agreement between the BSI Parties on one hand and the OKS Parties on the other.

2.      The first action, captioned *Servis One, Inc., d/b/a/ BSI Fin. Servs., Inc., et al v. OKS Grp., LLC, et al*, No. 2:19-cv-03654-MMB (E.D.Pa.) ("*BSI v. OKS I*"), was filed on August 13, 2019 after OKS refused to finalize a written settlement agreement for a settlement reached in July 2018.

3.      The July 2018 settlement was agreed to and material terms exchange, in writing, the evening before the start of testimony in an American Arbitration Association ("AAA") arbitration hearing between the parties.

4.      *BSI v. OKS I* was assigned to the Honorable Michael Baylson.

5.      After the parties had commenced discovery in *BSI v. OKS I* and just days before a scheduled settlement conference before Magistrate Judge David Strawbridge, the parties finalized a new written settlement agreement on March 10, 2020 (the "March 10, 2020 Settlement Agreement").  The March 10, 2020 Settlement Agreement is attached hereto as Exhibit A.

6.      On March 10, 2020, after agreeing to the final written settlement agreement, the parties jointly informed the Court in a written "Notice of Settlement" signed by counsel for both parties that the settlement conference no longer was necessary because the parties had "finalized a settlement agreement" and were in the "process of executing that settlement agreement."  The March 10, 2020 Notice of Settlement is attached hereto as Exhibit B.

7.    In response to the parties' joint Notice of Settlement, the Court dismissed the action on March 10, 2020.

8.    Two days later, the parties confirmed their final, binding settlement agreement in another submission to the Court, this time via a March 12, 2020, joint letter faxed to Judge Baylson signed by counsel for all parties reiterating that "the parties are in the process of executing the settlement agreement."  That joint submission is attached hereto as Exhibit C.

9.    On multiple occasions before and after these March 10 and 12 representations to the Court, in both writing and orally, counsel for the OKS Parties agreed that the final written settlement agreement exchanged by the parties in early March 2020 was final and entered into with the full authority of the OKS Parties after its consultation with counsel both here and in India.

10.    Despite representing to the BSI Parties and the Court that the March 10, 2020 Settlement Agreement was final and ready for execution, over the next six months, the OKS Parties failed to sign the March 10, 2020 Settlement Agreement repeatedly blaming the delay on the COVID-19 pandemic.

11.    Between March 2020 and September 2020, counsel for the BSI Parties engaged in numerous communications with Steven Friedman and Kelly Bonner of Duane Morris LLP, counsel for the OKS Parties, requesting the OKS Parties' signature consistent with their written representations both to the BSI Parties and the Court.

12.    After months of excuses from the OKS Parties' counsel attempting to justify the OKS Parties' delay, counsel for the BSI Parties sent Mr. Friedman a letter informing him that the BSI Parties were going to seek relief from the Court if they did not receive the signed March 10, 2020 Settlement Agreement by September 9, 2020.

13.     In response, Mr. Friedman stated that he and Duane Morris LLP ("Duane Morris") no longer represented the OKS Parties.  Mr. Friedman had represented the OKS Parties since at least 2015 and had numerous communications since March 2020 with counsel for the BSI Parties regarding the March 10, 2020 Settlement Agreement, including as recently as a July 17, 2020 e-mail initiated by Mr. Friedman.

14.     On September 8, 2020, a new attorney claiming to act for the OKS Parties contacted counsel for the BSI Parties to acknowledge receipt of the September 1 letter. Remarkably, and in a sudden reversal, this new counsel stated that the OKS Parties' position was that material terms of the settlement agreement had not been finalized.

15.     OKS's assertion that the March 10, 2020 Settlement Agreement is not final is directly contradicted by the OKS Parties' prior written and oral representations to the BSI Parties and the Court.

16.     The March 10, 2020 Settlement Agreement between the BSI Parties and OKS Parties was memorialized with a final, written settlement agreement and, based on the OKS Parties' counsel's representations to the BSI Parties' counsel and the Court, resulted in the dismissal of the BSI Parties' previous settlement enforcement action.

17.     The BSI Parties consequently now have been forced to file ***a second action*** to enforce a settlement agreement after the OKS Parties again agreed to a settlement only to later seek to evade that agreement.

18.     The OKS Parties' actions reflect a continuing disregard for the agreements they strike and demonstrate their intent to abuse the legal system.

19.     The BSI Parties are entitled to a declaration that the March 10, 2020 Settlement Agreement is enforceable and recovery of their attorneys' fees to enforce the validity of the March 10, 2020 Settlement Agreement.

### PARTIES AND JURISDICTION

14.     Plaintiff Servis One, Inc., d/b/a BSI Financial Services, Inc. is a Delaware corporation with its principal place of business located in Irving, Texas and is a party to the March 10, 2020 Settlement Agreement.

15.     Plaintiff BSI Financial Holdings, Inc. is a Delaware corporation with its principal place of business located in Irving, Texas and is a party to the March 10, 2020 Settlement Agreement.

16.     Plaintiff Entra Solutions Pvt. Ltd. is a company organized and existing under the laws of India and is a party to the March 10, 2020 Settlement Agreement.

17.     Plaintiff Gagan Sharma, the CEO of BSI, is a resident of Texas and negotiated the settlement while present in Philadelphia, Pennsylvania and is a party to the March 10, 2020 Settlement Agreement.

18.     Defendant OKS is a Pennsylvania limited liability company with its principal place of business located in Bala Cynwyd, Pennsylvania and is a party to the March 10, 2020 Settlement Agreement.

19.     Upon information and belief, Defendant Vinit Khanna, the CEO of OKS, is a resident of Pennsylvania, managed OKS, and negotiated the settlement on behalf of all Defendants while in Philadelphia, Pennsylvania and is a party to the March 10, 2020 Settlement Agreement.

20.     Defendant OKS Group International Pvt. Ltd. is a company organized and existing under the laws of India, with its principal place of business in India and is a party to the March 10,

2020 Settlement Agreement. Upon information and belief, Mr. Khanna is the controlling principal of OKS Group International Pvt. Ltd., and was at the time of the settlement.

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of Delaware, Texas and India on one hand and citizens of Pennsylvania and India on the other.

22.     The BSI Parties and OKS Parties agreed that the U.S. District Court for the Eastern District of Pennsylvania would be the exclusive forum and have jurisdiction over any controversy or claim between or among the parties arising out of or relating to the parties' settlement and March 10, 2020 Settlement Agreement.

23.     This Court thus has personal jurisdiction over the OKS Parties because OKS has its principal place of business in Pennsylvania, Mr. Khanna is a resident of Pennsylvania, and they and OKS Group International Pvt. Ltd. agreed to submit themselves to the jurisdiction of this Court in matters concerning the parties' settlement and the March 10, 2020 Settlement Agreement.

24.     Venue is proper in this judicial district because the parties agreed that this judicial district would be the exclusive forum for any controversy or claim between the parties relating to the settlement, which was agreed to by the parties while located in Philadelphia, Pennsylvania.

## **BACKGROUND**

25.     Established in 1987, BSI is a United States-based independent servicer of mortgage loans that provides its clients – generally banks and other institutions that own large numbers of mortgage loans – loan-related services.

26.     In or around 2006, OKS and Mr. Khanna invested in BSI and were issued shares of BSI as a result.

27.     BSI and OKS subsequently entered into a "build, operate, transfer" outsourcing agreement whereby OKS personnel in India would provide manual outsourcing support to supplement BSI's internal, U.S.-based back-end work.

28.     The terms of the outsourcing agreement eventually were renegotiated and the agreement was amended with the execution of the Master Services Agreement ("MSA") in 2013.

29.     Over the course of the relationship, OKS personnel in India assisted BSI's employees with rudimentary, manual, yet time-intensive tasks, like manual data entry of BSI's data into BSI's systems, copying and pasting information from certain spreadsheets over to other spreadsheets, and performing public PACER searches.

30.     BSI already had well-established procedures for its operations, and BSI's employees in the United States taught, step-by-step, OKS personnel how to perform the work with which they were expected to assist.

31.     As memorialized in the operative agreements, the parties understood and anticipated that BSI would eventually create its own subsidiary company in India and have the option of transferring some or all of the OKS personnel working on BSI tasks to that subsidiary.

32.     BSI's growth eventually outpaced OKS's ability to meet BSI's demand with basic manual outsourcing support, so BSI hired a third party in India, Axtria, Inc., to develop software that would automate the manual tasks on which BSI had trained OKS.

33.     That automation work commenced in 2014 and was completed in or around 2015. In part because it expected to absorb OKS personnel under the MSA's transfer provision once its India subsidiary was ready to begin operations, notwithstanding the automation, BSI delegated other manual and data entry-type tasks to OKS personnel to keep them busy and engaged on BSI matters.

34.    The OKS Parties initiated three separate actions after BSI announced its intention to terminate the MSA, which asserted identical claims arising out of that termination: (1) an arbitration proceeding with the AAA in Philadelphia, Pennsylvania (the only proper venue, under the MSA's forum selection clause), (2) a civil action in India, and (3) the improper filing of an abusive criminal complaint in India directed not only against BSI and Mr. Sharma personally but also his elderly father (who had no involvement in the business) as well as certain BSI employees, including several residing in the United States.

35.    OKS's principal allegation in these lawsuits and the criminal complaint was the allegation that BSI misappropriated OKS's so-called "trade secrets."  OKS also alleged various other breaches of the MSA.

36.    Although Mr. Khanna was a shareholder of BSI and previously had a friendship with Mr. Sharma, upon information and belief, Mr. Khanna took personal offense when he learned that BSI intended to terminate the MSA and perceived the termination as Mr. Sharma disrespecting their friendship.  Driven by personal animus not merit, Mr. Khanna sought retribution by improperly initiating the three meritless actions against BSI and Mr. Sharma.

37.    Based on evidence uncovered during discovery in the AAA arbitration, BSI asserted counterclaims against OKS and Mr. Khanna because OKS fraudulently overbilled BSI for years in a scheme devised and perpetrated by OKS's management, including Mr. Khanna.

## THE JULY 2018 SETTLEMENT BETWEEN THE PARTIES

38.    The evidentiary hearing in the AAA arbitration was scheduled to commence on July 18, 2018.

39.    Although the BSI Parties were fully prepared to vindicate their rights in the arbitration and prosecute their counterclaims against OKS, they decided to put the expense and

distraction of continuing litigation behind them and to bring about a complete separation with the OKS Parties.

40.    On July 17, 2018, the eve of that evidentiary hearing, BSI and OKS agreed to all material terms of a settlement resolving OKS's claims against BSI, BSI's counterclaims against OKS, and severing all relationships between the companies through BSI's repurchase of OKS's and Mr. Khanna's shares in BSI.

41.    In addition to resolving all claims of all parties, the monetary exchange was predominantly structured around BSI's repurchase of BSI shares owned by OKS and Mr. Khanna.

42.    The parties agreed that as a condition precedent to the payment, Mr. Khanna, OKS, and their affiliates had to first terminate and dismiss with prejudice both the civil and injunction proceedings they commenced in India and the criminal complaint they filed or caused to be filed with the police in New Delhi.

43.    The parties further agreed to a global and complete release of all claims that were asserted or could have been asserted worldwide.

44.    Immediately after the parties agreed to the settlement, OKS's counsel sent an e-mail to the Arbitration Panel the evening of July 17, 2018, requesting an adjournment of the hearing scheduled to begin the next day in light of the parties' settlement, and noted that the settlement included the "global releases of all pending matters in the United States and worldwide, civil and otherwise, by or against the parties to this arbitration, their affiliates, their employees, and family members."

45.    Steven Friedman, counsel for OKS, subsequently sent an email to Franco A. Corrado, counsel for BSI, the evening of July 17, 2018, memorializing the "terms of the settlement agreement reached today."

46.    Confirming that the settlement reached that day was final and binding, Mr. Friedman's email also stated that the arbitration was "terminated."

47.    Mr. Corrado responded to Mr. Friedman's email that same evening to memorialize the additional terms comprising the settlement agreed to by the parties, including the scope of the release.

48.    Mr. Friedman responded promptly the following morning (July 18, 2018) to thank Mr. Corrado "for [the] more extended description of the settlement terms in your email late yesterday" and to confirm that "[i]t accurately reflects the agreement we made."

49.    Over the next few months, the parties exchanged drafts of a formal settlement agreement.

50.    During this time, OKS's U.S. counsel continued to represent to BSI's counsel and the AAA Panel that the parties had agreed to the material terms of the settlement and were moving toward finalizing a formal settlement agreement.

51.    OKS's U.S. counsel continued to assure BSI's U.S. counsel that the OKS Parties remained committed to the settlement.

52.    The parties eventually finalized all provisions in the draft settlement agreement with the exception of Section 2, related to the steps the OKS Parties would take to withdraw or terminate the India criminal proceeding on the ground that the parties have settled.

53.    On March 7, 2019, the parties jointly stated to the AAA Panel that "the Parties and their affiliates agreed to the material terms of the settlement agreement on July 17, 2019" and had "drafted a written settlement agreement in accordance with those material terms," but that they were "continuing to coordinate with local counsel in India as to one issue in connection with the

written agreement, related to the mechanics for terminating the criminal complaint and related matters in India."

54.     By that joint representation to the AAA Panel, the parties confirmed the settlement and the OKS' Parties' obligation to terminate the criminal matter, and also confirmed that as far as a formal written settlement agreement was concerned, all terms were finalized other than Section 2.

55.     On May 1, 2019, the parties jointly stated to the AAA Panel that they were "continuing to coordinate with local counsel in India, who have been tasked with conferring about the proper procedure for terminating the criminal matter in India so that the written settlement agreement can be finalized.  Counsel from Morgan Lewis and Duane Morris have continued to press local India counsel and progress, while slow, has been made in recent weeks."

56.     The OKS Parties thereafter engaged in numerous delay tactics, driven by the misrepresentations and improper and evasive conduct of OKS's India-based counsel, Aditya Wadhwa, upon information and belief, at the direction of Mr. Khanna and OKS who were on a campaign to harass BSI by abusing the Court systems both here and in India.

## THE BSI PARTIES FILE AN ACTION IN THIS COURT TO ENFORCE THE JULY 17, 2018 SETTLEMENT AGREEMENT

57.     Over the next few weeks, BSI's counsel made numerous attempts to finalize the written agreement memorializing the July 17, 2018 settlement agreement between the parties, but the OKS Parties continued their pattern of evasive and improper conduct as they continued to refuse to honor their obligations under the terms of that settlement agreement.

58.     Because the OKS Parties failed to recognize or comply with the July 17, 2018 settlement agreement, the BSI Parties initiated an action on August 13, 2019 against the OKS

Parties in the United States District Court for the Eastern District of Pennsylvania and referred to herein as *BSI v. OKS I*.

59.     In *BSI v. OKS I*, the BSI Parties asserted a claim for Declaratory Judgment that the July 17, 2018 settlement was valid and enforceable. The BSI Parties also brought claims for Anticipatory Breach of Contract, Breach of Contract, and Promissory Estoppel against the OKS Parties.

60.     In the OKS Parties' Answer to the *BSI v. OKS I* Complaint, the OKS Parties admitted that they had agreed to the July 17, 2018 settlement agreement.

61.     For the first time, however, the OKS Parties claimed, incorrectly, that there was a "mutual mistake of law" with respect to the OKS Parties' ability to take certain action in connection with the India Criminal Proceeding.

62.     On October 31, 2019, Judge Baylson entered a Scheduling Order setting a discovery deadline of April 30, 2020.

63.     In response to the parties' agreement in their joint Rule 26 report to submit to a settlement conference, Magistrate Judge David R. Strawbridge issued an order on January 30, 2020, scheduling a settlement conference for March 17, 2020.

### THE PARTIES AGREE TO A
### FINAL WRITTEN SETTLEMENT AGREEMENT IN MARCH 2020

64.     In December 2019, while discovery was ongoing, counsel for the BSI Parties and counsel for the OKS Parties engaged in settlement discussions to resolve *BSI v. OKS I* and other litigations addressed in the July 17, 2018 settlement agreement.

65.     Throughout these discussions, counsel for the OKS Parties repeatedly informed counsel for the BSI Parties that they were discussing the settlement proposals with – and any agreement would require approval from – Vinit Khanna and OKS's legal counsel in India.

66.     During these negotiations in late 2019 and early 2020, the parties continued to utilize the form of the July 2018 settlement agreement and focused their discussions on Section 2, *i.e.*, the provision concerning OKS's obligations to withdraw or terminate the India criminal action.

67.     On January 27, 2020, Franco Corrado, counsel for the BSI Parties, sent Steven Friedman, counsel for the OKS Parties, an email setting forth a settlement proposal based on the previously agreed-to July 2018 settlement agreement with some revisions based on the OKS Parties' previous communications.

68.     On a February 20, 2020 telephone call between Mr. Corrado and Mr. Friedman, Mr. Friedman stated that the OKS Parties agreed in principle to the settlement proposal Mr. Corrado sent on January 27, 2020.

69.     Shortly after that call, Mr. Corrado memorialized the February 20, 2020, telephone call with Mr. Friedman in an email, stating that "I understand we are in conceptual agreement concerning the proposal below.  I will confer with my client and circulate a proposed final draft of the agreement as soon as we can."

70.     On February 25, 2020, Mr. Corrado sent Mr. Friedman an email attaching a "modified agreement implementing the changes agreed to conceptually last week."

71.     On February 28, 2020, Mr. Corrado sent a follow-up email asking for an update on the written settlement agreement and reminding Mr. Friedman of upcoming pre-conference submission deadlines in connection with the Magistrate Judge Strawbridge's Settlement Conference Order.

72.     A few hours later on February 28, 2020, counsel for the OKS Parties responded to acknowledge that they had shared the proposal directly with their client (Mr. Khanna) and confirmed their previous agreement to that proposal "in principle":  "On Tuesday, we emailed our

client the revised settlement agreement, to which he had verbally agreed in principle, and followed up again today.  We have requested a response by no later than the beginning of the week, emphasizing the need for urgency, and will follow up with you as soon as we hear back."

73.    Pursuant to the January 30, 2020 Settlement Conference Order's requirement that "counsel for plaintiff . . . set out to defendant a written good faith demand" by March 2, 2020, on March 2, Mr. Corrado re-sent to the OKS Parties the same draft modified settlement agreement that he had sent on February 25, 2020 and that had been verbally agreed to in principle by the OKS Parties.

74.    On March 3, 2020, counsel for the OKS Parties confirmed that the proposed draft settlement agreement was acceptable ***to their client*** subject to a modification that the BSI Parties agree to dismiss their arbitration counterclaims and *BSI v. OKS I*:  "We've spoken with our client, and the revised draft is acceptable with one request for clarification regarding the U.S. proceedings. We ask that the Agreement clarify that in addition to OKS agreeing to file a stipulation of dismissal in the Arbitration and Indian civil proceedings, BSI agree to dismiss its Arbitration Counterclaim as part of that stipulation, and that BSI further agree to file a stipulation of dismissal of the E.D. Pa. action without prejudice."

75.    The OKS Parties' counsel sent a revised draft incorporating the proposed final additions requested by the OKS Parties later that day.

76.    On March 4, 2020, Mr. Corrado responded on behalf of the BSI Parties to confirm that the edits were acceptable and to request circulation of an execution copy with OKS's payment instructions filled in: "Your changes are acceptable to BSI, though we did make a non-substantive edit to the recitals as reflected in the attached to accurately portray the nature of the EDPa

14

complaint. Please provide the payment information so that we can complete Section 2 and circulate an execution version."

77.     On March 10, 2020, the OKS Parties provided their instructions to facilitate the payment contemplated by the final settlement agreement and further requested that BSI "circulate a clean version of the settlement agreement for execution."

78.     Counsel for the BSI parties complied with the OKS Parties' request and responded the following day with an execution version of the final settlement agreement accepted by both the BSI Parties and OKS Parties – i.e., the March 10, 2020 Settlement Agreement attached as Exhibit A hereto.

### THE OKS PARTIES REPRESENT TO JUDGE BAYLSON AND MAGISTRATE JUDGE STRAWBRIDGE THAT THE PARTIES AGREED TO A FINAL SETTLEMENT AGREEMENT

79.     Because of the impending deadlines set forth in the January 30, 2020 Settlement Conference Order, on March 10, 2020, counsel for the BSI Parties and counsel for the OKS Parties jointly filed the Notice of Settlement, attached as Exhibit B, informing Judge Baylson and Magistrate Judge Strawbridge "that the Parties have finalized a settlement agreement" and stating that the parties "are in the process of executing that settlement agreement and will file a stipulation of dismissal of this action without prejudice once the agreement is signed." *See* Ex. B.

80.     In recognition that *BSI v. OKS I* had settled, the parties also jointly requested that the deadlines in the January 30, 2020 Settlement Conference Order be vacated.

81.     On March 10, 2020, an Order was issued, stating: "This 10th day of March, 2020, it having been reported that the issues between the parties in the above action has been settled and upon Order of the Court pursuant to the provisions of Rule 41.1(b) of the Local Rules of Civil Procedure of this Court, it is ORDERED that the above action is DISMISSED with prejudice, pursuant to agreement of counsel, without costs." A copy of that Order is attached as Exhibit D.

82.     Also on March 10, 2020, Judge Baylson issued an Order stating that "pursuant to the March 10, 2020 Letter from the Parties advising that this matter has settled, the January 30, 2020 Settlement Conference Order, Docket No. 15, and all associated deadlines are vacated." A copy of that Order is attached as Exhibit E.

83.     The parties confirmed that the March 10, 2020 Settlement Agreement was final and ready for execution in yet another submission to the Court, this time via a March 12, 2020, joint letter signed by counsel for all parties.  Exhibit C.

## THE OKS PARTIES DELAY SIGNING THE
## FINAL WRITTEN SETTLEMENT AGREEMENT

84.     Over the next few weeks, the United States and India grappled with the COVID-19 pandemic.

85.     Counsel for the BSI Parties periodically contacted counsel for the OKS Parties seeking the OKS Parties' signatures on the March 10, 2020 Settlement Agreement.

86.     On April 6, 2020, counsel for the BSI Parties and counsel for the OKS Parties discussed the status of the OKS Parties' execution of the March 10, 2020 Settlement Agreement via telephone.

87.     On this call, Ms. Bonner stated that she and Mr. Friedman – the OKS Parties' US counsel – were of the view that the execution-version of the settlement agreement sent on March 12, 2020 was final and complete.

88.     On that call, Ms. Bonner expressed frustration with the OKS Parties' counsel in India, Aditya Wadhwa, stating that Mr. Wadhwa was delaying the OKS Parties from signing the March 10, 2020 Settlement Agreement.

89.     On April 8, 2020, counsel for the BSI Parties sent an email to Ms. Bonner and Mr. Friedman reiterating that the settlement agreement sent on March 12, 2020 was final and binding,

as had been represented to the Court, and expressing their frustration with the OKS Parties' manufacturing of excuses to delay signing the March 10, 2020 Settlement Agreement.

90.    The OKS Parties' counsel continued to make excuses for the delay in signing the March 10, 2020 Settlement Agreement over the next several weeks – including blaming issues related to the pandemic.

91.    On July 20, 2020, counsel for the BSI Parties e-mailed counsel for OKS to state that the BSI Parties intended to seek relief from the Court if the OKS Parties did not soon execute the final March 10, 2020 Settlement Agreement in accordance with their prior representations to BSI and the Court.

## DUANE MORRIS WITHDRAWS ITS LEGAL REPRESENTATION OF THE OKS PARTIES

92.    On September 1, 2020, Mr. Corrado sent Mr. Friedman a letter, making one final attempt to obtain the OKS Parties' signature on the March 10, 2020 Settlement Agreement before seeking judicial intervention.

93.    The letter stated that if the BSI Parties did not receive the executed settlement agreement by September 9, 2020, the BSI Parties were going to raise the issue with the Court.

94.    Mr. Friedman responded on September 3, 2020, stating that he and his law firm, Duane Morris, no longer represented the OKS Parties and that he would forward Mr. Corrado's September 1, 2020 letter to the OKS Parties.

95.    Mr. Friedman and Duane Morris had represented the OKS Parties related to its disputes with the BSI Parties since at least 2015.

96.    Although Mr. Friedman had made repeated representations to Judge Baylson, Magistrate Judge Strawbridge, and counsel for the BSI Parties stating that the parties had agreed

to a final written settlement agreement, Mr. Friedman did not provide any explanation as to why he and Duane Morris suddenly ceased to represent the OKS Parties.

97.    On September 9, 2020, new counsel purporting to act on the OKS Parties' behalf informed counsel for BSI that the OKS Parties were denying that they had settled with the BSI Parties.

98.    The BSI Parties thus have been forced to initiate this second action to obtain a declaratory judgment that the March 10, 2020 Settlement Agreement is valid and enforceable.

99.    The BSI Parties also seek their attorneys' fees and costs incurred since March 12, 2020, as provided for under the terms of the written settlement agreement, which states: "For any claim or controversy arising out of or relating to this Agreement and/or the enforcement of this Agreement, the prevailing party shall be entitled to recover all costs, fees and expenses incurred, including reasonable attorneys' fees."

## COUNT I
## DECLARATORY JUDGMENT, 42 Pa. C.S. Sec. 7531-7541
### *All BSI Parties against All OKS Parties*

100.    Plaintiffs restate and reallege the allegations set forth in paragraphs 1-99 above, as if fully set forth herein.  For Count I of their Complaint, the BSI Parties allege and state as follows:

101.    The Parties entered into a settlement, which has been memorialized in a final written settlement agreement by counsel for both the BSI Parties and OKS Parties.

102.    The OKS Parties expressly agreed to this agreement in principle on February 20, 2020, and agreed to the final written settlement agreement no later than March 10, 2020.

103.    On numerous occasions, the OKS Parties by and through their counsel expressly represented to the BSI Parties, Judge Baylson, and Magistrate Judge Strawbridge that *BSI v. OKS I* had settled, that the parties (including the OKS Parties) had agreed to the final written settlement

18

agreement, and that the parties (including the OKS Parties) were in the process of executing that agreement.

104.    The OKS Parties now improperly claim that the final written settlement agreement to which they expressly agreed on March 10 is not binding on them and they have refused to execute the settlement agreement.

**WHEREFORE**, the BSI Parties request:

1.  An order and declaratory judgment that the March 10, 2020 Settlement Agreement is a valid and enforceable contract under which the parties are bound, and that the OKS Parties shall execute the March 10, 2020 Settlement;

2.  An order requiring the OKS Parties to comply with the terms of the March 10, 2020 Settlement Agreement; and,

3.  An award of attorneys' fees and costs incurred by the BSI Parties both in the United States and India related to the OKS Parties' conduct since March 12, 2020, as provided for under the terms of the written settlement agreement.

4.  The BSI Parties also seek other such relief as this Court may deem just and proper.

DATED:    September 23, 2020                    Respectfully submitted,

                                               **MORGAN, LEWIS & BOCKIUS LLP**


                                               /s Glen R. Stuart
                                               Glen R. Stuart (Pa. ID No. 41302)
                                               Franco A. Corrado (Pa. ID No. 91436)
                                               Karl Schweitzer (Pa. ID No. 312028)
                                               1701 Market Street
                                               Philadelphia, Pennsylvania 19103-2921
                                               (215) 963-5000
                                               (215) 963-5001 (facsimile)
                                               glen.stuart@morganlewis.com
                                               franco.corrado@morganlewis.com
                                               karl.schweitzer@morganlewis.com

                                               *Attorneys for Plaintiffs Servis One, Inc., d/b/a BSI*
                                               *Financial Services, Inc., BSI Financial Holdings,*
                                               *Inc., Entra Solutions Pvt. Ltd., and Gagan Sharma*