IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SERVIS ONE, INC., et al., | : | CIVIL ACTION |
| | : | NO. 20-4661 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| OKS GROUP, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    March 24, 2021

## I.   INTRODUCTION

Plaintiffs Servis One, Inc., d/b/a BSI Financial Services, Inc. ("BSI"), BSI Financial Holdings, Inc., Entra Solutions Pvt. Ltd., and Gagan Sharma (collectively, "Plaintiffs") bring this action against OKS Group, LLC ("OKS"), its CEO, Vinit Khanna, and OKS Group International Pvt. Ltd (collectively, "Defendants") for their alleged intentional breach of a settlement agreement and their fraudulent misrepresentations concealing their breach.

The Plaintiffs' Complaint contains four counts: I) Declaratory judgment; II) Breach of contract; III) Fraud; and IV) Promissory estoppel. The Defendants filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.

The Defendants' Motion to Dismiss the Plaintiffs' Complaint will be denied with the exception of Count III only, which will be dismissed without prejudice and with leave to amend for failure to allege sufficient facts concerning justifiable reliance.

## II.  FACTUAL BACKGROUND[1]

In July 2018, the Plaintiffs and the Defendants agreed to a global settlement agreement (the "first settlement agreement") that included a release of all parties' claims. This is the second action the Plaintiffs have brought against the Defendants after agreeing to this global settlement agreement. The first action ("BSI v. OKS I") was filed on August 13, 2019, after which the Defendants admitted they agreed to a global settlement of all claims, but asserted that the agreement was not binding because of a mutual mistake of law as to the procedures the Defendants could utilize to terminate a criminal complaint they had filed against the Plaintiffs in India.

After the parties commenced discovery in BSI v. OKS I, the parties again agreed to the terms of a revised global settlement agreement on February 20, 2020. The terms of that settlement were based on the first settlement agreement, with a few revisions based on the Defendants' assertion that they could not

---

[1]     The facts alleged by the Plaintiffs and asserted herein are accepted as true and viewed in the light most favorable to the Plaintiffs.

take affirmative steps to withdraw the criminal proceedings, but would not oppose steps taken by the Plaintiffs.

On March 10, 2020, just days before a scheduled settlement conference with Magistrate Judge Strawbridge that had been mutually agreed to and scheduled by the parties, the parties finalized and memorialized the February 20, 2020 agreement (the "second settlement agreement"). On numerous occasions between February 20, 2020, and March 10, 2020, Duane Morris (counsel for the Defendants) made express written and oral representations to the Plaintiffs' counsel that the Defendants had reviewed, agreed, and authorized the second settlement agreement.

On March 10, 2020, the parties also jointly informed Judges Baylson and Strawbridge in a written "Notice of Settlement" signed by counsel for both parties that the settlement conference was no longer necessary because "the Parties have finalized a settlement agreement" and were in the "process of executing that settlement agreement." Am. Compl. ¶ 15, ECF No. 12. Based on these representations, Judge Baylson dismissed the action on March 10, 2020. Two days later, on March 12, 2020, the parties confirmed that they had entered into a settlement agreement in another submission to the Court, this time via a joint letter faxed to Judge Baylson, who was presiding over the case, and signed by counsel for all parties. The letter reiterated that "the parties are in the process of executing the

[second] settlement agreement." Id. ¶ 17. On multiple occasions before and after these March 10 and 12 representations to the Court, Duane Morris agreed (both in writing and orally) that the second settlement agreement was final and entered into with the full authority of the Defendants after the Defendants had consulted with counsel in India.

Despite representing to the Plaintiffs and the Court that the second settlement agreement was final and ready for execution, the Defendants failed to sign the second settlement agreement over the next six months, repeatedly blaming the delay on COVID-19 and questions that the Defendants' counsel in India had raised regarding a confidentiality provision in the agreement. Between March 2020 and July 2020, the Plaintiffs' counsel engaged in numerous communications with Duane Morris, requesting the Defendants' signature on the agreement. During this time, and unbeknownst to the Plaintiffs, the Defendants were taking actions in India that were in direct violation of the second settlement agreement. For example, the Defendants made ex parte submissions to the Indian authorities requesting that they pursue criminal charges against the Plaintiffs.

At no point during the communications between Duane Morris and the Plaintiffs' counsel did Duane Morris assert that the Defendants had not agreed to the terms of the second settlement agreement. Nor did Duane Morris ever inform the Plaintiffs that

the Defendants made ex parte submissions to the criminal authorities in India. Instead, Duane Morris gave reassurances that the second settlement agreement was binding and that the Defendants' signatures were forthcoming.

After the Plaintiffs' counsel learned of the Defendants' ex parte submissions in India, the Plaintiffs' counsel sent Duane Morris a letter on September 1, 2020, informing Duane Morris that the Plaintiffs were going to seek relief from the Court if they did not receive the signed second settlement agreement by September 9, 2020. The Plaintiffs also confronted Duane Morris with evidence that the Defendants were breaching the second settlement agreement. In response, Duane Morris stated that they no longer represented the Defendants and offered no explanation to the Plaintiffs for their withdrawal from representing the Defendants in this case.

On September 9, 2020, a new attorney, Stephen Harvey of Steve Harvey Law LLC, claiming to act for the Defendants, contacted the Plaintiffs' counsel and stated that the Defendants' position was that material terms of the second settlement agreement had not been finalized. Even though BSI v. OKS I had been dismissed in March 2020 as a result of the reported settlement, this was the first time that the Defendants asserted to the Plaintiffs that they had not agreed to the second settlement agreement.

The Plaintiffs initiated this action on September 23, 2020. In October 2020, Vinit Khanna (the CEO of OKS) submitted a sworn declaration to the Court claiming that neither he nor any of the other Defendants authorized Duane Morris to enter into the second settlement agreement, and asserting for the first time that he had never intended to include in any settlement agreement the dismissal of the criminal claims that the Defendants had asserted against the Plaintiffs in India.

According to the Amended Complaint, Khanna's assertions are directly contrary to numerous contemporaneous written and oral representations made to counsel for the Plaintiffs and the Court by Duane Morris. The assertions, according to the Amended Complaint, are also contrary to the parties' history dating back to 2018 of the parties and their counsel negotiating settlement provisions concerning the appropriate procedures for terminating those criminal proceedings, including at Khanna's alleged direction and with his full knowledge.

Based on these facts and allegations, the Plaintiffs filed the present action for breach of contract, fraud, promissory estoppel, and a declaratory judgment that the parties entered into a binding settlement agreement. The Defendants filed a Motion to Dismiss. This Motion is now before the Court.

**III. LEGAL STANDARD**

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV. DISCUSSION

### A. Jurisdictional Issues

The Defendants first argue that the Plaintiffs have not alleged a justiciable claim for a declaratory judgment because the claim is not ripe, so Count I should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In order to determine whether the claim is ripe, the Court must consider "1) the adversity of the parties' interest, 2) the conclusiveness of the judicial judgment, and 3) the practical help, or utility of that judgment." Mkt. St. Secs., Inc. v. NASDAQ OMX PHLX LLC, 900 F. Supp. 2d 529, 533 (E.D. Pa. 2012) (citing Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990)).

The Defendants appear to only contest the first prong, i.e., whether the parties' interests are adverse. The Defendants first argue that the parties are not adverse because the Defendants shared the Plaintiffs' desire to resolve the parties' differences. This argument is specious. Regardless of good intentions, the fundamental disagreement expressed in the Amended Complaint creates a case and controversy, which satisfies the ripeness requirement, i.e., the Plaintiffs argue that the second settlement agreement is binding on the parties and the Defendants claims that it is not because they never authorized it.

Next, the Defendants argue that the parties are not adverse because the second settlement agreement is contingent in nature. "[A] potential harm that is 'contingent' on a future event will likely not satisfy [the adversity of interest] prong of the ripeness test." URL Pharma, Inc. v. Reckitt Benckiser, Inc., No. 15-505, 2015 WL 5042911, at *15 (E.D. Pa. Aug. 25, 2015) (alterations in original) (quoting Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc. Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009)).

The Defendants argue that the second settlement agreement is contingent in nature because the agreement provides that if the Indian criminal proceedings are "not dismissed, terminated, and/or concluded without any further prosecution, appeal, plea,

or conviction, and/or the imposition of any fines, penalties, or sentences upon" the Plaintiffs, then the Plaintiffs have the right to void the settlement, in which case the agreement would be "vacated, rescinded, cancelled, and annulled, and the Parties [would] return to the <u>status quo ex ante</u>, as if they had not entered into this Agreement." Am. Compl. Ex. A, at ¶ 17, ECF No. 12-1. However, the harm here is not contingent on a future event. <u>See</u> <u>URL Pharma</u>, 2015 WL 5042911, at *15. Rather, the language in the agreement merely establishes a condition subsequent, which renders the agreement voidable, but does not affect the validity of the agreement, nor render "unripe" the present dispute concerning whether the parties have entered into a valid, binding settlement. <u>See</u> <u>Vandergrift v. Pennsauken Sch. Dist.</u>, No. CV 12-7646, 2017 WL 6566139, at *11 (D.N.J. Dec. 22, 2017) ("A condition subsequent does not delay the enforceability of a contract, as it only preserves the possibility that a contract can be set aside later in time if a condition is not fulfilled.").

The Defendants also claim that "it is significant that, while Plaintiffs complain that OKS has not executed the agreement (and, indeed, base their entre [sic] declaratory judgment claim on this fact), <u>Plaintiffs also have still failed to execute the agreement</u>. . . . Plaintiffs' claim for a declaratory judgment is a request for an advisory opinion."

Defs.' Mot. Dismiss 13, ECF No. 15-1. However, the claim here is not that the Defendants have not signed the agreement, but that the failure to sign the agreement evidences that the Defendants have repudiated the agreed upon terms.

As a result of the foregoing, the Defendants' motion to dismiss Count I for lack of subject matter jurisdiction will be denied.

**B. Count I: Declaratory Judgment**

In Count I, the Plaintiffs seek a declaratory judgment that the parties entered into a binding settlement agreement. The Defendants argue that this Count should be dismissed for failure to state a claim because the Plaintiffs do not allege that the Defendants expressly authorized Duane Morris to agree to the settlement agreement. However, the Amended Complaint contains numerous allegations to that effect, including specific examples, which the Court must accept as true at this stage of the proceedings and draw all reasonable inferences therefrom in favor of the Plaintiffs. See Am. Compl. ¶ 121, ECF No. 12 ("Based on multiple written and oral representations by Duane Morris . . . [the Defendants] were at all times aware of the terms of the settlement and authorized their counsel to enter into the settlement, including the March 10, 2020 Settlement Agreement."); see also id. ¶¶ 14, 18, 108-109, 113, 115, 166.

As a result of the foregoing, the Defendants' motion to dismiss Count I for failure to state a claim will be denied.

### C. Count II: Breach of Contract

Count II is a claim for breach of the second settlement agreement. The parties agree that Pennsylvania law controls this claim. To establish a breach of contract claim, the Plaintiffs must plead facts demonstrating "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." Hentz v. Allstate Prop. & Cas. Ins. Co., No. CV 19-2007, 2020 WL 509162, at *2 (E.D. Pa. Jan. 31, 2020) (quoting Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).

Initially, the Defendants argue that this Count should be dismissed for failure to state a claim because the Plaintiffs do not allege that the Defendants expressly authorized Duane Morris to agree to the settlement agreement. This argument fails for the same reason it failed in relation to Count I, see supra Part B (explaining that the Amended Complaint adequately alleges that the Defendants authorized the agreement).

Next, the Defendants argue that Count II should be dismissed because the Amended Complaint fails to allege that the Defendants took any actions in breach of the second settlement agreement. This dispute centers on the language in the "Mutual Release" provision of the second settlement agreement:

>       The Parties . . . hereby waive, release and
> forever discharge each other . . . from any and all
> past, present, and future criminal or civil
> complaints, actions, or causes of action, at law or in
> equity, arising under statute or common law, and any
> suits, debts, liens, contracts, agreements, promises,
> liabilities, warranties, claims, demands, damages,
> losses, attorneys' fees, costs and expenses, whether
> known or unknown, unforeseen, unanticipated,
> unsuspected or latent, arising from or related to the
> Proceedings, the E.D.Pa. Proceedings, the FIR, the
> Criminal Complaint, or the claims, facts, legal
> arguments, resolution, or settlement of the
> Proceedings, the E.D.Pa. Proceedings, and/or the FIR,
> the Criminal Complaint (the "Released Claims"). This
> release is intended to be given the broadest
> construction allowed by Pennsylvania law and under
> Indian Law. . . .
>       In addition to waiving and releasing the Released
> Claims, the Parties promise and unequivocally
> undertake never to file or prosecute any claim
> of any kind (whether at law or in equity) against the
> other Party in any federal, state or municipal court,
> foreign court or tribunal, arbitration tribunal
> asserting any Released Claim, and/or make any criminal
> complaint asserting any Released Claim. The Parties
> represent that, as of the Effective Date, and updated
> as of the Payment Date, that other than the
> Arbitration, the Indian Lawsuit, the FIR, the E.D.Pa.
> Proceedings, and the Criminal Complaint, the Parties
> have not filed or caused to be filed any claims
> against any of the other Parties.

Am. Compl. Ex. A, at 9-10, ECF No. 12-1. The Amended Complaint

alleges that the Defendants breached the second settlement

agreement by "acting in direct violation of its provisions—

including but not limited to the Mutual Release—by making

numerous ex parte submissions and/or arguments to the police

and/or court in India arguing that the [Plaintiffs], among

13

others, should be charged and seeking prosecution of the Released Claim." <u>Id.</u> ¶ 178, ECF No. 12.

The Defendants argue that nothing in the above Mutual Release language "prevents Defendants from arguing to Indian criminal authorities that prosecution should move forward against persons who were <u>already the subject of an existing criminal complaint</u>." Defs.' Mot. Dismiss 22, ECF No. 15-1. They argue that the last paragraph above from the Mutual Release provision was meant to refer only to prosecuting civil claims, since they have no power over Indian prosecutorial decisions, and that the only thing the parties were prevented from doing as to criminal proceedings was to make a new criminal complaint asserting any released claim.

The Defendants' argument is at best one which reads the Mutual Release language as being ambiguous (i.e., subject to more than one interpretation). Under their construction (as opposed to the Plaintiffs' construction), making ex parte submissions to the Indian criminal authorities to encourage them to proceed with already existing criminal complaints does not violate the Mutual Release provision. Given two conflicting constructions, and at this stage of the proceedings and viewing the facts in the light most favorable to the Plaintiffs, the Plaintiffs' construction (i.e., that such ex parte communications are covered by the Mutual Release provision)

14

prevails. Therefore, the Plaintiffs have sufficiently pled that the Defendants breached the second settlement agreement.

The Defendants also argue that the termination provision allowing the Plaintiffs to void the agreement if the Indian criminal proceedings continue, see supra Part A, only allows for the Plaintiffs to declare the contract void and to withhold the payment due to the Defendants for their shares of Plaintiff BSI. However, nothing in that termination provision provides that those rights shall be the exclusive remedies for the Plaintiffs, and as discussed above, the language merely constitutes a condition subsequent making the agreement voidable (not void) at the option of the Plaintiffs, which does not affect the enforceability of the contract.

As a result of the foregoing, the Defendants' motion to dismiss Count II will be denied.[2]

**D. Count III: Fraud**

Count III is a claim for fraud and alleges that the Defendants, through Duane Morris, made repeated material misrepresentations and omissions as to the Defendants' agreement not to seek further prosecution of the Defendants' criminal

---

[2]     In a footnote in their reply brief, the Defendants also attempt to argue for the first time that the Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing. The Court will not consider this argument, as the Defendants did not raise it in their Motion to Dismiss, despite the fact that the Amended Complaint explicitly alleges that they breached said covenant. This argument is therefore waived.

complaint in India. The parties agree that Pennsylvania law controls this claim.

### 1. Gist of the Action Doctrine

The Defendants first argue that Count III is premised on purported duties flowing from the settlement agreement and is therefore barred by the gist of the action doctrine. This doctrine has been restated in a number of similar ways. Courts have held that the doctrine bars fraud claims: (1) "arising solely from a contract between the parties;" (2) where "the duties allegedly breached were created and grounded in the contract itself;" (3) where "the liability stems from a contract;" or (4) where the fraud claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." See Etoll, Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10, 19 (Pa. Super. 2002) (citations omitted).

However, the doctrine is not applicable where "the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant." Synthes, Inc. v. Emerge Med., Inc., 25 F. Supp. 3d 617, 725 (E.D. Pa. 2014) (quoting Greater Phila. Health Servs. II Corp. v. Complete Care Servs., L.P., No.

16

Civ.A.2387, 2000 WL 33711052, at *2 (Pa. Com. Pl. Nov. 20, 2000)). In this kind of scenario, the doctrine is inapplicable because "[s]uch a claim sounds in tort as it implicates [not a contractual duty, but] the 'societal duty not to affirmatively mislead or advise without factual basis.'" See Telwell Inc. v. Grandbridge Real Est. Cap. LLC, 143 A.3d 421, 429-30 (Pa. Super. Ct. 2016) (quoting Bruno v. Erie Ins. Co., 106 A.3d 48, 58 (Pa. 2014)).

Here, the Plaintiffs allege, inter alia, that the Defendants made misrepresentations through Duane Morris concerning the delay in signing the agreement in order to conceal their breach from the Plaintiffs. Specifically, the Plaintiffs allege that the Defendants, through Duane Morris, stated that they were delayed in signing the agreement due to issues related to COVID-19 and questions from the Defendants' counsel in India regarding the confidentiality provision of the second settlement agreement. The Plaintiffs argue that these were excuses designed to conceal the fact that the Defendants were taking action contrary to the second settlement agreement and continuing to pursue criminal charges against the Plaintiffs in India. See Am. Compl. ¶¶ 139, 183, 186, ECF No. 12. Given these allegations, the gist of the action doctrine is not applicable.

### 2. Federal Rule of Civil Procedure 9(b)

17

Next, the Defendants argue that even if the gist of the action doctrine is inapplicable, the Plaintiffs' fraud claim fails because it does not plead the necessary elements with the specificity required under Federal Rule of Civil Procedure 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

To properly plead a claim for fraud, a plaintiff must allege five elements: (1) "a specific false representation of material fact;" (2) "knowledge by the person who made it of its falsity;" (3) "ignorance of its falsity by the person to whom it was made;" (4) "the intention that it should be acted upon;" and (5) "that the plaintiff acted upon it to his damage." Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc., 939 F. Supp. 365, 369 (E.D. Pa. 1996) (quoting Shapiro v. UJB Fin. Corp., 964 F.3d 272, 284 (3d Cir. 1992)).

First, the Defendants argue that the Plaintiffs fail the first element because they only point to statements made by Duane Morris and do not allege that the Defendants themselves made any fraudulent statements. However, Pennsylvania law provides that "a principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and misfeasances of his agent committed within the scope of his employment," even if "the

18

principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment." Aiello v. Ed Saxe Real Est., Inc., 499 A.2d 282, 285 (Pa. 1985). Thus, the Defendants would be liable for the communications between their agent (Duane Morris) and the Plaintiffs, if the communications occurred within the scope of Duane Morris's agency, as it is alleged in this case.

Next, the Defendants argue that the Plaintiffs' fraud by omission claim must be dismissed because they had no duty to disclose anything to the Plaintiffs. However, under Pennsylvania law, "the deliberate nondisclosure of a material fact is regarded as the legal equivalent of an intentional false affirmation." Busy Bee, Inc. v. Corestates Bank N.A., 67 Pa. D. & C. 4th 496, 513 (Pa. Com. Pl. 2004) (citing Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999); Fox's Food Inc. v. K-Mart Corp., 870 F. Supp. 599, 609 (M.D. Pa. 1994)). "If the fact concealed is peculiarly within the knowledge of one party and of such a nature that the other party is justified in assuming its nonexistence, there is a duty of disclosure, and deliberate suppression of such fact is fraud." Fox's Food, 870 F. Supp. at 609.

Here, the Plaintiffs allege, inter alia, that the Defendants deliberately concealed their belief that there was no

settlement and their conduct concerning the criminal proceedings
in India because they wanted the benefit of lulling the
Plaintiffs into believing there was a settlement—e.g., saving on
litigation costs and avoiding an adverse judgment in OKS v. BSI
I—while simultaneously advancing its own agenda in India and
hiding that conduct from the Plaintiffs. Pls.' Resp. to Defs.'
Mot. Dismiss 32, ECF No. 17-1; see also Am. Compl. ¶¶ 138-139,
141-143, 183-190, ECF No. 12. Accepting these allegations as
true and drawing all reasonable inferences in favor of the
Plaintiffs, the Plaintiffs have sufficiently alleged that the
Defendants had a duty to disclose. Thus, the Defendants'
argument that the Plaintiffs' fraud by omission claim should be
dismissed will be denied.

Lastly,[3] the Defendants argue that the Plaintiffs cannot
meet the fifth element because they fail to sufficiently allege
how they justifiably relied on and were damaged by the alleged
misrepresentations and omissions. As to the question of damages,
the pleading requirement is minimal, as nominal damages are
available as a remedy for fraud under Pennsylvania law. See
Sands v. Forrest, 434 A.2d 122, 124 (Pa. Super. Ct. 1981). Here,

---

[3]     In their reply brief, the Defendants also attempt to argue for the
first time that the Plaintiffs cannot state a claim for fraud because they
fail the third element above, i.e., ignorance of the statements' falsity. The
Court will not consider this argument, as the Defendants did not raise it in
their Motion to Dismiss, despite the fact that they cite to allegations in
the Amended Complaint that have not changed and existed at the time of their
Motion to Dismiss. This argument is therefore waived.

the Plaintiffs have sufficiently alleged they were damaged by
the fraud, see Am. Compl. ¶¶ 186-189, ECF No. 12, but whether
they are entitled to monetary or other damages is not a proper
question for the Court to consider at the motion to dismiss
stage.

As to the question of justifiable reliance, the Plaintiffs
argue that an allegation of reliance is sufficient to state
justifiable reliance, and cite to Hemphill v. Nationstar
Mortgage LLC, No. CV 19-2451, 2018 WL 4929864, at *10 (E.D. Pa.
Oct. 10, 2018) for support. However, in Hemphill, the Court
found that "Plaintiff avers that [Defendant] pressed her to
participate in the Diversion Program by saying at every turn
that her participation would be free of charge. She further
alleges that she relied on these statements in deciding to
pursue the program. These allegations are sufficient to state
justifiable reliance." Id. (emphasis added). Here, the Amended
Complaint states:

> The BSI Parties also relied on the
> representations of the OKS Parties' counsel that the
> COVID-19 pandemic and the OKS Parties' Indian
> counsel's purported questions about the
> confidentiality provision of the March 10, 2020
> Settlement Agreement were causing delay in the OKS
> Parties signing the settlement agreement. In
> actuality, the OKS Parties were concealing that they
> were taking action directly contrary to the March 10,
> 2020 Settlement Agreement in demanding that the BSI
> Parties be charged criminally in India.
> The BSI Parties reasonably and justifiably relied
> upon the OKS Parties' misrepresentations set forth

> above and the OKS Parties knowingly concealed and
> failed to disclose their improper conduct from the BSI
> Parties.

Am. Compl. ¶¶ 186-187, ECF No. 12. These allegations are mere
conclusory statements and do not allege any facts that would
allow the Court to reasonably infer that the Plaintiffs
justifiably relied on the misrepresentations. Cf. Hemphill, 2018
WL 4929864, at *10 (alleging that she justifiably relied on
fraudulent statements by deciding to pursue a program).
Consequently, the Defendants' motion to dismiss Count III will
be granted on this basis with leave to amend.

Given that Count III will be dismissed, the Defendants'
request to dismiss the claim for punitive damages in Count III
is now moot and the Court need not consider it.

### E. Count IV: Promissory Estoppel

Count IV is a claim for promissory estoppel and alleges
that had the Plaintiffs not relied on Duane Morris's
representations on behalf of the Defendants concerning the
second settlement agreement, the Plaintiffs could have proceeded
to litigate their claims in BSI v. OKS I. Instead, they agreed
to terminate the case because they were lulled into the false
belief that the matter was resolved.

The parties agree that Pennsylvania law controls this
claim. A claim for promissory estoppel requires allegations that
(1) "the promisor made a promise that he should have reasonably

expected to induce action or forbearance on the part of the promisee;" (2) "the promisee actually took action or refrained from taking action in reliance on the promise;" and (3) "injustice can be avoided only by enforcing the promise." Gutteridge v. J3 Energy Grp., Inc., 165 A.3d 908, 919 (Pa. Super. Ct. 2017) (quoting Crouse v. Cyclops Indus., 745 A.2d 606, 610 (2000)).

First, the Defendants argue that Count IV should be dismissed because the Defendants did not authorize Duane Morris to make the representations. This argument fails because the Plaintiffs explicitly allege numerous times in the Amended Complaint that the Defendants did in fact authorize Duane Morris to make such representations. See Am. Compl. ¶¶ 14, 18, 20, 108-109, 113, 115, 121, 123, 193, ECF No. 12. Whether they actually did or not is not an appropriate question to decide at the motion to dismiss stage.

Next, the Defendants argue that the Plaintiffs cannot demonstrate justifiable reliance because they "immediately [became] concerned that the settlement agreement was not executed by Defendants, and express[ed] this concern to Defendants' counsel on multiple occasions in late March-early April 2020," and thus could have moved to vacate the dismissal

in BSI v. OKS I within 90 days under Local Rule 41.1(b).[4] Even if

the Plaintiffs were expressing concerns, however, the

Plaintiffs' early concerns were met with repeated assurances on

which they were entitled to rely. The Pennsylvania Superior

Court has held that lawyers "owe a duty of candor to the

tribunal, and a duty of fairness to opposing parties and

opposing counsel." Eigen v. Textron Lycoming Reciprocating

Engine Div., 874 A.2d 1179, 1187 (Pa. Super. Ct. 2005); see also

Rothman v. Fillette, 469 A.2d 543, 547 (Pa. 1983) ("We must rely

upon the fidelity of our Bar and in the main, experience has

demonstrated the justification for that reliance."). Thus, the

Plaintiffs have sufficiently pled justifiable reliance upon the

representations made by Duane Morris and the Defendants' motion

to dismiss Count IV on this basis will be denied.

### F. Leave to Amend

Leave to amend should be freely granted unless there is an

apparent reason why it should not be, such as futility of

---

[4]    Local Civil Rule 41.1(b) provides that:

Whenever in any civil action counsel shall notify the Clerk or
the judge to whom the action is assigned that the issues between
the parties have been settled, the Clerk shall, upon order of the
judge to whom the case is assigned, enter an order dismissing the
action with prejudice, without costs, pursuant to the agreement
of counsel. Any such order of dismissal may be vacated, modified,
or stricken from the record, for cause shown, upon the
application of any party served within ninety (90) days of the
entry of such order of dismissal, provided the application of the
ninety-day time limitation is consistent with Federal Rule of
Civil Procedure 60(c).

amendment. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). In this case, Count III is not futile and the Plaintiffs will be granted leave to amend.

**V. Conclusion**

For all of the aforementioned reasons, the Defendants' Motion to Dismiss the Plaintiffs' Complaint will be denied with the exception of Count III, which will be dismissed without prejudice and with leave to amend. An appropriate order follows.