**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SERVIS ONE, INC, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No.: 20-cv-4661 |
| | : | |
| OKS GROUP INTERNATIONAL PVT. | : | |
| LTD., et al., | : | |
| Defendants. | : | |

<u>**MEMORANDUM**</u>

**SITARSKI, M.J.**                                      **December 13, 2021**

Presently pending before the Court is Defendants' Motion to Compel Discovery Relevant to Plaintiffs' Claim that They Relied on Defendants' Alleged Misrepresentations (Mot. to Compel, ECF No. 42), Plaintiffs' response in opposition (Resp., ECF No. 50-1), Defendants' reply in support (Reply, ECF No. 52) and Plaintiffs' sur-reply in opposition.  (Sur-reply, ECF No. 56).[1]  For the reasons that follow, Defendants' motion shall be **DENIED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this matter, as alleged by Plaintiffs, were amply summarized by Judge Robreno in his Memorandum accompanying his Order granting in part and denying in part Defendants' Motion to Dismiss:

> In July 2018, the Plaintiffs and the Defendants agreed to a global settlement agreement (the "first settlement agreement") that included a release of all parties' claims. This is the second action the Plaintiffs have brought against the Defendants after agreeing to this global settlement agreement. The first action ("BSI v. OKS I") was filed on August 13, 2019, after which the Defendants admitted they agreed to a global settlement of all claims, but asserted that

---

[1]  The Honorable Eduardo C. Robreno referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 48).

the agreement was not binding because of a mutual mistake of law as to the procedures the Defendants could utilize to terminate a criminal complaint they had filed against the Plaintiffs in India.

After the parties commenced discovery in BSI v. OKS I, the parties again agreed to the terms of a revised global settlement agreement on February 20, 2020. The terms of that settlement were based on the first settlement agreement, with a few revisions based on the Defendants' assertion that they could not take affirmative steps to withdraw the criminal proceedings, but would not oppose steps taken by the Plaintiffs.

On March 10, 2020, just days before a scheduled settlement conference with Magistrate Judge Strawbridge that had been mutually agreed to and scheduled by the parties, the parties finalized and memorialized the February 20, 2020 agreement (the "second settlement agreement"). On numerous occasions between February 20, 2020, and March 10, 2020, Duane Morris (counsel for the Defendants) made express written and oral representations to the Plaintiffs' counsel that the Defendants had reviewed, agreed, and authorized the second settlement agreement.

On March 10, 2020, the parties also jointly informed Judges Baylson and Strawbridge in a written "Notice of Settlement" signed by counsel for both parties that the settlement conference was no longer necessary because "the Parties have finalized a settlement agreement" and were in the "process of executing that settlement agreement." Am. Compl. ¶ 15, ECF No. 12. Based on these representations, Judge Baylson dismissed the action on March 10, 2020. Two days later, on March 12, 2020, the parties confirmed that they had entered into a settlement agreement in another submission to the Court, this time via a joint letter faxed to Judge Baylson, who was presiding over the case, and signed by counsel for all parties. The letter reiterated that "the parties are in the process of executing the [second] settlement agreement." Id. ¶ 17. On multiple occasions before and after these March 10 and 12 representations to the Court, Duane Morris agreed (both in writing and orally) that the second settlement agreement was final and entered into with the full authority of the Defendants after the Defendants had consulted with counsel in India.

Despite representing to the Plaintiffs and the Court that the second settlement agreement was final and ready for execution, the Defendants failed to sign the second settlement agreement over the next six months, repeatedly blaming the delay on COVID-19 and questions that the Defendants' counsel in India had raised regarding a confidentiality provision in the agreement. Between March 2020 and July 2020, the Plaintiffs' counsel engaged in

numerous communications with Duane Morris, requesting the Defendants' signature on the agreement. During this time, and unbeknownst to the Plaintiffs, the Defendants were taking actions in India that were in direct violation of the second settlement agreement. For example, the Defendants made ex parte submissions to the Indian authorities requesting that they pursue criminal charges against the Plaintiffs.

At no point during the communications between Duane Morris and the Plaintiffs' counsel did Duane Morris assert that the Defendants had not agreed to the terms of the second settlement agreement. Nor did Duane Morris ever inform the Plaintiffs that the Defendants made ex parte submissions to the criminal authorities in India. Instead, Duane Morris gave reassurances that the second settlement agreement was binding and that the Defendants' signatures were forthcoming.

After the Plaintiffs' counsel learned of the Defendants' ex parte submissions in India, the Plaintiffs' counsel sent Duane Morris a letter on September 1, 2020, informing Duane Morris that the Plaintiffs were going to seek relief from the Court if they did not receive the signed second settlement agreement by September 9, 2020. The Plaintiffs also confronted Duane Morris with evidence that the Defendants were breaching the second settlement agreement. In response, Duane Morris stated that they no longer represented the Defendants and offered no explanation to the Plaintiffs for their withdrawal from representing the Defendants in this case.

On September 9, 2020, a new attorney, Stephen Harvey of Steve Harvey Law LLC, claiming to act for the Defendants, contacted the Plaintiffs' counsel and stated that the Defendants' position was that material terms of the second settlement agreement had not been finalized. Even though BSI v. OKS I had been dismissed in March 2020 as a result of the reported settlement, this was the first time that the Defendants asserted to the Plaintiffs that they had not agreed to the second settlement agreement.

The Plaintiffs initiated this action on September 23, 2020. In October 2020, Vinit Khanna (the CEO of OKS) submitted a sworn declaration to the Court claiming that neither he nor any of the other Defendants authorized Duane Morris to enter into the second settlement agreement, and asserting for the first time that he had never intended to include in any settlement agreement the dismissal of the criminal claims that the Defendants had asserted against the Plaintiffs in India.

> According to the Amended Complaint, Khanna's assertions are directly contrary to numerous contemporaneous written and oral representations made to counsel for the Plaintiffs and the Court by Duane Morris. The assertions, according to the Amended Complaint, are also contrary to the parties' history dating back to 2018 of the parties and their counsel negotiating settlement provisions concerning the appropriate procedures for terminating those criminal proceedings, including at Khanna's alleged direction and with his full knowledge.

(Memo., ECF No. 25, at 2-6).

To this general background, I add the specific discovery history pertinent to the instant motion.  On April 16, 2021, Defendants served Plaintiffs with two Requests for Production (RFPs) relevant to Plaintiffs' fraud and promissory estoppel claims:

> **Request No. 5.** All documents (including internal emails and memoranda), in the possession of Plaintiffs or Plaintiffs' counsel (including Morgan Lewis and Plaintiff's Indian counsel), that relate to decisions, deliberation or consideration of any legal action, tactic, or strategy taken, considered, discussed, or rejected with regard to the United States action or Indian criminal proceedings, from and including March 10, 2020 up until the filing of the initial Complaint in this action; this request does not seek communications regarding the drafting and filing of the initial complaint in this matter.

> **Request No. 6.** All documents (including internal emails, handwritten notes, and memoranda), in the possession of Plaintiffs or Plaintiffs' counsel (including Morgan Lewis and Plaintiff's Indian counsel), that relate to any alleged verbal (including via telephone) or written statements or representations or omissions by Duane Morris to Morgan Lewis, from and including March 10, 2020 through September 23, 2020, including the calls on April 6 and May 26, 2020; this request does not seek communications regarding the drafting and filing of the initial complaint in this matter.

(Resps. & Objections to First RFPs, ECF No. 44, Ex. D at Nos. 5-6).

On June 25, 2021, Plaintiffs objected to these RFPs on the grounds, *inter alia*, that each "seeks documents protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection." (*Id.*).  As to RFP number 5, Plaintiffs further

responded in relevant part: "Based on the foregoing objections, Plaintiffs will not produce documents in response to this Request beyond the documents that it has agreed to produce in response to other requests." (*Id.* at No. 5). As to RFP number 6, they further responded in relevant part: "Plaintiffs will conduct a reasonable search for and produce reasonably accessed non-privileged documents responsive to this Request for the time period of March 10, 2020 to September 23, 2020, to the extent such documents exist." (*Id.* at No. 6).

The parties engaged in a series of communications over the next two months regarding Plaintiffs' assertion of the attorney-client privilege and work-product doctrine. (Emails, ECF No. 44, Ex. E). After a July 23, 2021, telephone call, Plaintiffs' counsel emailed Defendants' counsel on August 6, 2021:

> As we discussed, Plaintiffs are preparing the production of non-privileged communications between Plaintiffs and Plaintiffs' counsel, including responsive communications relaying factual statements describing Duane Morris' representations to Morgan Lewis between March 10, 2020 to September 23, 2020. Per our discussion, Plaintiffs are producing such communications in an effort to compromise and avoid dispute with the understanding that the production of the factual statements themselves at the request of Defendants will not be used as a basis for asserting waiver of privilege or work product protection. Also, as discussed, the remaining responsive communications that Plaintiffs maintain are protected from disclosure for this time period will be logged.

(*Id.* at 6).

However, Plaintiffs' promise to produce redacted communications and a privilege log did not resolve the discovery dispute, with Defendants continuing to insist that Plaintiffs had already waived the attorney-client privilege and work-product doctrine by asserting claims "directly implicating [Plaintiffs'] legal strategy and its purported basis . . . ." (*Id.* at 1). Nonetheless,

Plaintiffs produced the redacted documents[2] and log on August 27 and September 14, 2021, respectively.  (Resp. Memo., ECF No. 50-1, at 9).

The parties were also in communication during the summer of 2021 about the depositions of Gargan Sharma, the CEO of Servis One, Inc. d/b/a BSI Financial Services, Inc. (BSI), and Plaintiffs' counsel at Morgan Lewis, Franco Corrado and Karl Schweitzer.  (*Id.* at 8).  On July 16, 2021, Defendants' counsel emailed Corrado and Schweitzer, stating: "We will need to resolve the privilege issues before we depose either of you."  (Emails, ECF No. 50-8, at 4).  After additional emails between counsel, Plaintiffs' counsel emailed Defendants' counsel on September 13, 2021, agreeing to the depositions at the beginning of October but reiterating Plaintiffs' intention to assert attorney-client privilege and work-product doctrine as applicable and requesting: "To the extent you intend to seek such protected information during any deposition, please let us know when you are available for a meet and confer this week to discuss."  (*Id.* at 1).  Defendants did not respond but proceeded with the depositions of Corrado, Schweitzer, and Sharma, respectively, on October 6, 8, and 15, 2021.  (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 14; Resp. Memo., ECF No. 50-1, at 9).  At these depositions, Defendants' counsel attempted to ask about communications between Morgan Lewis, on the one hand, and Sharma and BSI's general counsel, Jordan Dorchuck, on the other, regarding the April 6 and May 26, 2021, telephone calls between Morgan Lewis and Duane Morris.  (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 14 (internal citations omitted)).  However, Plaintiffs'

---

[2]  The redacted documents included a March 27, 2020, email exchange between Dorchuck and Morgan Lewis regarding execution of the second settlement agreement and an April 7, 2020, email from Schweitzer to Sharma, Dorchuck, and Corrado regarding the telephone call between Morgan Lewis and Duane Morris on the prior day.  (Emails, ECF No. 44, at Exs. J, K).  Defendants claim that Plaintiffs have "further waived any claim of privilege by producing [these] partially redacted written communications between Morgan Lewis and BSI . . . ." (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 27).

counsel instructed the deponents not to answer, except to the extent that Corrado and Schweitzer could testify about what was said in the calls.  (*Id.*).

On October 4, 2021, Defendants requested[3] the deposition of Dorchuck.  (Emails, ECF No. 44, Ex. H, at 2).  Plaintiffs objected on October 6, 2021, on the basis that Dorchuck lacked "information that is not discoverable through other means, including through the already scheduled deposition of Gagan Sharma and the limited scope depositions of Plaintiffs' outside counsel . . . ."  (Emails, ECF No. 44, Ex. H, at 1).  On October 8, 2021, Defendants responded that Dorchuck had "relevant testimony" regarding the facts the Morgan Lewis attorneys relayed to him about their communications with the Duane Morris attorneys and, further, that Defendants had the "right to test the assertions of privilege" made by Plaintiffs.  (Emails, ECF No. 44, Ex. I, at 6).  Despite additional emails between October 11 and 13, 2021, the parties proved unable to resolve the dispute.  (*Id.* at 1-5).

On October 19, 2021, Defendants filed the instant motion to compel.  (Mot. to Compel, ECF No. 42).  They ask the Court to compel Plaintiffs to produce: (1) "internal and external communications, including with [their] counsel, regarding the alleged misrepresentations and [their] thinking during that time frame [April 6 to September 3, 2020] about taking (or not taking) action in this Court or in India, as alleged, including [their] failure to take any steps during that time frame to enforce the alleged March 20, 2020 Settlement Agreement";[4] (2) Dorchuck for a deposition to testify about these communications; and (3) Corrado, Schweitzer and Sharma for depositions to testify "fully" about these communications.  (Mot. to Compel,

---

[3]  Defendants never formally noticed Dorchuck's deposition.  (Resp. Memo., ECF No. 50-1, at 24; Reply, ECF No. 52, at 4, 16 n.2).

[4]  Following Defendants' practice in its motion and supporting briefing, the Court will refer to these communications as the "Requested Discovery."

ECF No. 42, at 2 (italics omitted)).  Defendants filed their supporting memorandum under seal

the following day.  (Memo. in Supp. of Mot. to Compel, ECF No. 44).  On November 2, 2021,

Plaintiffs filed their response and memorandum in opposition.  (Resp., ECF No. 50; Resp.

Memo., ECF No. 50-1).  Defendants filed their reply on November 8, 2021, and Plaintiffs filed

their sur-reply on November 17, 2021.  (Reply, ECF No. 52; Sur-reply, ECF No. 56).


## II.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal

litigation.  Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible
> in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Although the scope of discovery is broad, it is not unlimited.  *Inventio AG v.

Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009); *see also Eisai Inc.

v. Sanofi-Aventis U.S., LLC*, No. 08-4168 MLC, 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012)

("Discovery is not without bounds . . . and courts will not permit parties to engage in fishing

expeditions . . . .") (quoting *MacDermid Printing Sols., L.L.C., v. E.I. du Pont de Nemours &

Co.*, No. 07-4325, 2008 WL 323764, at *1 (D.N.J. Feb. 5, 2008)).  Upon a party's motion or of

its own accord, the court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosure or discovery of the materials sought. *See* FED. R. CIV. P. 37(a). The moving party must initially demonstrate the relevance of the information sought to a particular claim or defense. *Bostwick v. Shoop*, No. 1:09-CV-2212, 2010 WL 4536977, at *2 (M.D. Pa. Nov. 3, 2010) (citing *Paluch v. Dawson*, Civil No. 1:CV–06–01751, 2008 WL 2785638 at *2 (M.D. Pa. July 17, 2008)). Relevance in this context has been "construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 349 U.S. 495, 501 (1947)). "The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." *Peay v. Fisher*, No. 3:15-CV-00345, 2016 WL 3876634, at *1 (M.D. Pa. July 15, 2016) (citing *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982)).

## III.     DISCUSSION

Defendants maintain that Plaintiffs must produce the Requested Discovery and depositions for three reasons. First, they contend that the documents and depositions are "highly relevant" to Plaintiffs' fraud claims, particularly the issue of justifiable reliance. (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 16-19) Second, they posit that Plaintiffs waived the attorney-client privilege and work-product protection as to this discovery by placing their

communications with counsel and counsel's thought processes "at issue" in the litigation by asserting a fraud claim allegedly based upon these communications and mental impressions. (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 19-27; Reply, ECF No. 52, at 4-11).  Third, Defendants submit that Plaintiffs waived the privilege and protection by selectively disclosing "partially redacted written communications between Morgan Lewis and BSI, and by allowing deposition testimony regarding 'facts' contained in privileged communications."  (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 27-30; Reply, ECF No. 52, at 15-16).

A.      **Relevance**

1.      **Parties' Arguments**

In their supporting memorandum,[5] Defendants assert a right to the Requested Discovery and related depositions because they are "clearly relevant to Plaintiffs' claims and Defendants' defenses to these claims."  (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 19).  They argue that Plaintiffs base their claims on the contention that Defendants, via misrepresentations made through their counsel on the April 6 and May 26 telephone calls, caused Plaintiffs and their counsel, reasonably relying on these misrepresentations, "to fail to take action to enforce the settlement before Judge Baylson, *or* to take any actions to defend itself in the Indian criminal proceedings."  (*Id.* at 16-17 (emphasis in original)).  They insist that the Requested Discovery and depositions are necessary "to test [Plaintiffs'] allegations that their failure to take protective legal actions was reasonably induced" by Defendants'/Duane Morris's misrepresentations.  (*Id.* at 18).  Defendants point out that although Plaintiffs have asserted that the sought-after information is protected by the attorney-client privilege and work-product doctrine, they have never asserted that it is not relevant.  (*Id.* at 19).  They accuse Plaintiffs of attempting "to hide

---

[5] As Plaintiffs note in their sur-reply, Defendants do not reassert in their reply that "relevance" is a basis to grant their motion to compel.  (Sur-reply, ECF No. 56, at 1).

from scrutiny the truth or falsity of their allegations of reasonable reliance by not allowing

Defendants access to the discovery that could test their allegations."  (*Id.*).  They claim that this

information would reveal what Duane Morris said to Morgan Lewis on the calls, whether

Plaintiffs and their counsel believed Duane Morris, and whether their decision not to take any

legal action following the calls resulted from reliance upon Duane Morris's representations "or

some other reasons(s)."  (*Id.*).  According to Defendants, "[w]ithout such information, Plaintiffs'

blithe, and frankly unbelievable,[6] assertions that they and their attorneys sat on their rights based

on statements made in that call will necessarily go unrebutted factually, thereby entirely

depriving Defendants of the ability to defend themselves against such claims."  (*Id.*).

Plaintiffs respond that "[c]ourts have rejected Defendants' position . . . that the so-called

relevance of privileged or work product materials is sufficient to pierce those protections."

(Resp. Memo., ECF No. 50-1, at 1).  Citing the Third Circuit's decision in *Rhone-Poulenc Rorer*

*Inc. v. Home Indem. Co.*, Plaintiffs observe that a party may not "test" an opposing party's

contentions through the discovery of privileged documents and that "relevance is not the

touchstone for determining whether a party has waived the attorney-client privilege or attorney

work product."  (*Id.* at 11, 16 (citing 32 F.3d 851, 864 (3d Cir. 1994))).  They maintain that, in

any event, the Requested Discovery "is not even relevant because it is undisputed that neither

Plaintiffs nor their counsel (or even Duane Morris) was aware of Defendants' intentional breach

of the settlement agreement or scheme to avoid signing the settlement agreement that Defendants

plainly authorized."  (*Id.* at 2).  Rather, they claim that "[c]ontrary to Defendants'

---

[6] Defendants make similar merits arguments in this section of their memorandum.
(Memo. in Supp. of Mot. to Compel, ECF No. 44, at 17 ("As Defendants argued in their Motion
to Dismiss the Second Amended Complaint, [Plaintiffs'] allegations are meritless on the face of
the Second Amended Complaint, because . . . .")).  The Court does not consider these merits
arguments on this discovery motion.

mischaracterizations, Plaintiffs' fraud claim is based on Defendants' ***fraudulent omission*** of

their intentional breach of the settlement agreement from Plaintiffs." (*Id.* (emphasis in original)).

> 2.     **Analysis**

In *Rhone-Poulenc*, the Third Circuit rejected as "of dubious validity" cases in which

"courts have allowed the opposing party discovery of confidential attorney client

communications in order to test the client's contentions." 32 F.3d at 864 (citing *Byers v.*

*Burleson*, 100 F.R.D. 436 (D.D.C. 1983); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)). It

found that although these "opinions dress up their analysis with a checklist of factors, they

appear to rest on a conclusion that the information sought is relevant and should in fairness be

disclosed." *Id.* The court disavowed relevance as the test for whether information is subject to

disclosure: "Relevance is not the standard for determining whether or not evidence should be

protected from disclosure as privileged, and that remains the case even if one might conclude the

facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an

issue." *Id.*

The court explained the importance of protecting from disclosure even relevant

privileged material:

> Evidentiary privileges are an exception to the general rule that
> relevant evidence is admissible. Privileges forbid the admission of
> otherwise relevant evidence when certain interests the privileges
> are thought to protect are regarded as more important than the
> interests served by the resolution of litigation based on full
> disclosure of all relevant facts. The privilege forbidding the
> discovery and admission of evidence relating to communications
> between attorney and client is intended to ensure that a client
> remains free from apprehension that consultations with a legal
> adviser will be disclosed. The privilege encourages the client to
> reveal to the lawyer confidences necessary for the lawyer to
> provide advice and representation. As the privilege serves the
> interests of justice, it is worthy of maximum legal protection.
>
> If we intend to serve the interests of justice by encouraging
> consultation with counsel free from the apprehension of disclosure,

> then courts must work to apply the privilege in ways that are
> predictable and certain. An uncertain privilege—or one which
> purports to be certain, but rests in widely varying applications by
> the courts—is little better than no privilege.
>
> . . . .
>
> As the attorney client privilege is intended to assure a client that he
> or she can consult with counsel in confidence, finding that
> confidentiality may be waived depending on the relevance of the
> communication completely undermines the interest to be served.
> Clients will face the greatest risk of disclosure for what may be the
> most important matters. Furthermore, because the definition of
> what may be relevant and discoverable from those consultations
> may depend on the facts and circumstances of as yet unfiled
> litigation, the client will have no sense of whether the
> communication may be relevant to some future issue, and will
> have no sense of certainty or assurance that the communication
> will remain confidential.

*Id.* at 862-64 (citations and quotations omitted).

Thus, it is clear that Defendants have no right to the Requested Discovery and related

depositions simply because the information they seek may be relevant to Plaintiffs' claims or

Defendants' defenses.  Instead, to waive privilege, Plaintiffs must have "made the decision and

taken the affirmative step in the litigation to place the advice of the attorney in issue."  *Id.* at 863.

Accordingly, the Court turns to Defendants' argument that the sought-after information is

discoverable because Plaintiffs have placed their attorneys' advice in issue by asserting a fraud

claim against Defendants.

### B.    **Advice of Counsel Placed at Issue**

### 1.    **Parties' Arguments**

In its memorandum, Defendants posit that Plaintiffs have "waived any privilege, whether

the attorney-client privilege or work product doctrine, by affirmatively placing directly at issue

its attorney-client communications as well as the internal thought processes of its attorneys."

(Memo. in Supp. of Mot. to Compel, ECF No. 44, at 20).  They contend that, in such

circumstances, "fairness" dictates that the materials be disclosed notwithstanding their otherwise

privileged status and cite several cases in purported support of finding waiver here.  (*Id.* at 20,

22-24 (citations omitted)).  For example, quoting the "highly analogous" case of *Glenmede Tr.*

*Co. v. Thompson*, Defendants assert:

> **The party opposing the defense of reliance on advice of counsel**
> **must be able to test what information had been conveyed by the**
> **client to counsel and vice-versa regarding that advice—whether**
> **counsel was provided with all material facts in rendering their**
> **advice, whether counsel gave a well-informed opinion and**
> **whether that advice was heeded by the client.**

(*Id.* at 25 (quoting 56 F.3d 476, 486 (3d Cir. 1995) (emphasis added by Defendants))).

They also attempt to distinguish *Rhone-Poulenc* by observing that courts have found it

"limited . . . to the facts of the case," where "advice of counsel was not raised as an affirmative

defense *nor were there any acts evincing a clear intent to waive the attorney-client privilege by*

*placing at issue reliance on the advice of counsel*."  (*Id.* at 26 (quoting *Harding v. Dana Transp.*,

914 F. Supp. 1084, 1096 (D.N.J. 1996) (internal citation omitted))).  Defendants maintain that

the instant case is similar to *Glenmede Trust*, *Harding* and others "where a defendant asserts an

'advice of counsel' defense."  (*Id.*).  According to Defendants, Plaintiffs are "essentially using

'advice of counsel' not as a defense, but *offensively*, by alleging that it and its attorneys made

legal decisions in reasonable reliance on alleged misrepresentations by *their opponents'*

counsel—Duane Morris."  (*Id.* (emphasis in original)).  Citing *Glenmede Trust*, they insist that it

is "vital" and "critical[ ]" that they be permitted "to test that theory" by discovering "what was

discussed in and among counsel and client regarding the information provided by Duane Morris

and what legal steps, if any, were taken in alleged reliance on it."  (*Id.* (citing 56 F.3d at 486)).

Ultimately, Defendants present the Court with three factors to determine whether a party

has carried its burden of demonstrating implied waiver, including whether:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

(*Id.* at 21 (quoting *Utesch v. Lannett Co., Inc.*, No. 16-5932, 2020 WL 7260775, at *10 (E.D. Pa. Dec. 9, 2020) (internal citation omitted))).

Applying the first two factors, Defendants contend that Plaintiffs have affirmatively placed at issue its communications with counsel and the latter's thought processes by asserting a fraud claim alleging that Plaintiffs and their internal and external counsel "made legal decisions in reasonable reliance on alleged fraudulent misrepresentations and omissions by OKS and its counsel." (*Id.* at 21 (emphasis omitted)). Applying the third, they maintain that application of the attorney-client privilege and/or work-product doctrine would deny them access to information vital to their defense against Plaintiffs' fraud claim. (*Id.*).

In response, Plaintiffs deny that they have taken any affirmative steps to place the advice of counsel at issue in this case. (Resp. Memo., ECF No. 501, at 10). They cite *Rhone-Poulenc* and its progeny for the proposition that "[a] party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action." (*Id.* at 11 (quoting 32 F.3d at 864) (additional citations omitted)). Rather, they observe that in *Rhone-Poulenc* "the Third Circuit established a clear rule that the client must take ***affirmative steps*** to put the ***advice*** of its attorneys at issue to constitute a waiver . . . ." (*Id.* at 12 (citing 32 F.3d at 864-65) (emphasis added by Plaintiffs)). Plaintiffs also cite district court cases for the proposition that asserting a fraud claim, alleging that counsel was consulted to make a decision (legal or otherwise), or producing discovery establishing that counsel's advice affected the party's state of mind in a relevant matter are not affirmative steps placing the advice at issue. (*Id.* at 12-14, 16 (citing *Rasby v. Pillen*, No. 8:15CV226, 2016 WL 4995036 (D. Nebr. Sept. 19,

2016); *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76 (S.D.N.Y. 1986) (additional citations omitted))).

Plaintiffs note that Defendants do not point to any allegation, discovery document or deposition testimony (including seven hours of testimony by Sharma) indicating that Plaintiffs relied on the advice of counsel in declining to take action earlier regarding Defendants' failure to execute the second settlement agreement. (*Id.* at 14). Rather, they assert that Defendants are attempting "to conflate an 'advice of counsel' concept" with the fact that the fraudulent misrepresentations and omissions were made to Plaintiffs' counsel, who then relayed them to Plaintiffs. (*Id.*). They maintain: "That Defendants perpetrated the fraud through Duane Morris' communications with Morgan Lewis, however, has no bearing whatsoever on the issue of privilege or work product waiver because Plaintiffs have not claimed to have relied on the advice of counsel when making decisions constituting reliance." (*Id.* at 15). They submit that, if courts were to accept Defendants' argument, "every fraud claim in which the defrauded party received the opposing party's communications through its attorneys would result in automatic waiver regardless of whether the party actually put the advice of counsel at issue." (*Id.* (citation omitted)).

Plaintiffs reject Defendants' accusation that they are using advice of counsel "offensively[ ] by alleging that [they] and [their] attorneys made legal decisions in reasonable reliance on alleged misrepresentations by their opponents' counsel—Duane Morris." (*Id.* (quoting Memo. in Supp. of Mot. to Compel, ECF No. 44, at 26)). They characterize their case as "principally . . . one of ***omission***, meaning that Plaintiffs rested on their rights because Defendants concealed their actions in India and true reasons for not signing the settlement agreement . . . ." (*Id.* at 15-16 (emphasis in original)). They insist that, in such a case, a party

cannot rely on its counsel's advice regarding how to proceed in light of the omission because the party "is necessarily unaware of the conduct or information that is hidden . . . ."  (*Id.* at 16).

In addition, Plaintiffs address Defendants' cited cases.  They note that the court in *Utesch*, on grounds applicable here, found *no* implied waiver, and that, in any event, the three-factor test for determining implied waiver set forth in that case is drawn from *Hearn*, which was specifically rejected, by name, in *Rhone-Poulenc*.  (*Id.* at 17 (citations omitted)).  They contend that Defendants' remaining cases, including *Glenmede Trust* and *Harding*, are distinguishable because "in direct contrast to this case . . . the advice of counsel was specifically and affirmatively put at issue by the specific nature of the claim (e.g., patent infringement, malpractice) or by a party affirmatively using 'advice of counsel' as a defense or to prove a claim."  (*Id.* (citations omitted)).  Plaintiffs reject any suggestion that *Glenmede Trust*, in which the defendant "raised reliance on the advice of counsel . . . as an affirmative defense" and produced an attorney opinion letter in support, somehow "change[d] the waiver analysis set forth in *Rhone-Poulenc*."  (*Id.* at 19 (citing *Glenmede Tr.*, 56 F.3d at 486)).

Defendants reply that Plaintiffs' Second Amended Complaint (SAC) is "replete" with "clear" averments that Plaintiffs and Morgan Lewis jointly made legal decisions not to exercise Plaintiffs' rights in reliance upon Defendants' and Duane Morris's alleged misrepresentations and omissions.  (Reply, ECF No. 52, at 4 & 5 n.1).  In fact, according to Defendants, the fraud claim is "*premised and dependent*" on otherwise protected communications because Plaintiffs are unable to establish it without establishing why their attorneys made, and Plaintiffs approved, the legal decisions at issue.  (*Id.* at 4-5 (emphasis in original)).  Defendants further posit that Plaintiffs waived any applicable protection when their witnesses testified at their depositions regarding "Morgan Lewis's mental processes as attorneys in explaining the legal decisions made by them and their clients . . . ."  (*Id.* at 6).  Defendants cite several purported examples of such

testimony, as well as instances in which the deponents refused to answer questions on this topic. (*Id.* at 6-9). Defendants therefore accuse Plaintiffs of using "privileged information as both a sword and a shield," basing "their fraud count on such privileged matters, and indeed *testify[ing] about* these matters in their depositions, while at the same time attempting to hide behind privilege in refusing to turn over relevant documents that implicate these matters and refusing to answer other questions about such matters in their depositions." (*Id.* at 5, 10 (emphasis in original)).

Defendants claim that Plaintiffs' cited cases are distinguishable "because they do not involve factual scenarios, like the instant case, where the Plaintiffs placed at issue *legal decisions* and *legal advice of their counsel*." (*Id.* at 10 (emphasis in original)). They argue that, in this case, Plaintiffs waived any applicable protection by alleging that Defendants fraudulently induced them into pursuing a specific "*litigation strategy*, which, by definition (and as opposed to the sale of a business at issue in *Rasby*)," placed attorney-client privileged communications and work-product protected mental processes at issue. (*Id.* at 11.) Directly at odds with Plaintiffs' contention that it is immaterial that the alleged fraudulent communications were made through Morgan Lewis, Defendants assert that this fact is "critical[ ]." (*Id.*). In their view, "Plaintiffs cannot hope to prove their fraud claim without testifying about the reasons that its *attorneys* made the decision they did." (*Id.* (emphasis in original)).

In Plaintiffs' sur-reply, they counter that Defendants' reply tacitly abandons their misplaced reliance on the *Hearn* test, but in its place Defendants merely "reframe" their earlier argument by now claiming Defendants waived privilege "because the fraud claim 'depends on' the 'legal decisions' made by counsel." (Sur-reply, ECF No. 56, at 2 (quoting Reply, ECF No. 52, at 2)). Plaintiffs describe this argument as "simply false." (*Id.* at 6). They reiterate that their fraud count is "primarily one of omission" and point to Judge Robreno's Order denying

Defendants' Motion to Dismiss, in which he stated that the "essence" of the fraud allegations was that Defendants "***deliberately concealed***" their position that no settlement had been reached and that they were moving forward with the Indian criminal proceeding because they wanted Plaintiffs to believe that a settlement existed.  (*Id.* (quoting Order, ECF No. 35, at 2) (emphasis added by Plaintiffs)).  Plaintiffs insist that they could not have relied on their counsel's advice regarding this concealment because neither they nor Morgan Lewis were aware of it.  (*Id.*).

Plaintiffs also assert that Defendants' argument that the "mere act of 'bringing a lawsuit' amounts to an 'affirmative step' placing their 'legal decisions' at issue" subverts the importance of the privilege as set forth in *Rhone-Poulenc* and directly conflicts with that case's admonition that a client must take "an affirmative step" to waive it.  (*Id.* at 2-3 (citing *Rhone-Poulenc*, 32 F.3d at 863)).  They maintain that Defendants' "new theory lacks any legal or factual basis," is unsupported by any cited caselaw, and is irreconcilable "with the numerous directly applicable cases from this District that hold that privilege is not waived even if a client's state of mind is in issue or if the client states counsel was consulted."  (*See id.* at 3 & n.3 (collecting cases) (quotations omitted)).  Plaintiffs point out that Defendants fail to address all but two of these cases – *Rasby* and *Standard Chartered Bank PLC* – which Plaintiffs maintain that Defendants mischaracterize.  (*Id.* at 3-5 & n.3).

Finally, Plaintiffs allege that Defendants also mischaracterize the witness testimony attached to their reply and, further, that it was improperly attached as new exhibits without explaining why it was not filed with earlier briefing.  (*Id.* at 6).  They insist that the testimony relates only to facts, such as what Duane Morris said to Morgan Lewis, and does not put at issue any advice of counsel.  (*Id.* at 6-7).  They also assert that the cited testimony is taken out of context, misconstrued or in response to hypothetical, counterfactual, misleading, and otherwise objectionable questions, and they provide examples that allegedly demonstrate these problems

with it. (*Id.* at 7). They cite *Noonan v. Kane* for the proposition that attorney advice cannot be placed at issue simply by deposition testimony in response to an attorney's "artful questioning." (*Id.* at 8 (citing No. 15-6082, 2019 WL 5722213 (E.D. Pa. Nov. 5, 2019))).

### 2.    Analysis

As noted, to waive privilege, a party "must [have] made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." *Rhone-Poulenc*, 32 F.3d at 863; *see In re Niaspan Antitrust Litig.*, No. 13-MD-2460, 2018 WL 2363577, at *3 (E.D. Pa. May 24, 2018) (observing that the Third Circuit standard is "more demanding" than in some other circuits). Examples include filing a malpractice action against an attorney or asserting advice of counsel as a defense to a claim of willful patent infringement. *Rhone-Poulenc*, 32 F.3d at 863 (citations omitted). However, "[a] party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action." *Id.* at 864. Nor does "a party's assertion of reliance in support of a fraud claim . . . necessarily lead to an implied waiver of the attorney-client privilege with respect to legal advice that might undermine the position that such reliance was reasonable." *Green v. Beer*, No. 06 Civ. 4156, 2010 WL 3422723, at *6 (S.D.N.Y. Aug. 24, 2010).

*Rhone-Poulenc* disapproved of the three-factor test for determining implied waiver excerpted from *Utesch* by Plaintiffs. (*See* Memo. in Supp. of Mot. to Compel, ECF No. 44, at 21 (quoting *Utesch*, 2020 WL 7260775, at *10)). *Utesch*, ultimately, borrowed this test from *Hearn*. *See Utesch*, 2020 WL 7260775, at *10 (quoting *In re Human Tissue*, 255 F.R.D. 151, 159 (D.N.J. 2008)); *In re Human Tissue*, 225 F.R.D. at 159 (quoting *Hearn*, 68 F.R.D. at 581). But *Rhone-Poulenc* criticized *Hearn*'s "dubious" decision that "dress[ed] up [its] analysis with a checklist of factors" and "allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions" because its "state of mind may be in

issue in the litigation." *Rhone-Poulenc*, 32 F.3d at 864 (citing *Hearn* 68 F.R.D. 74) (additional

citations omitted). *Glenmede Trust*, on the other hand, permitted the party seeking discovery "to

test what information had been conveyed by the [opposing party] to counsel and vice-versa

regarding that advice," where the latter party had asserted reliance on advice of counsel as a

defense in the matter.  56 F.3d at 486.

The parties dispute whether this case is more like *Rhone-Poulenc*, where the state of

mind of the party asserting protection was merely "in issue," or like *Glenmede Trust*, where the

party had *affirmatively placed* protected communications in issue, such as by asserting a claim or

defense based upon them.  (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 26; Reply, ECF

No. 50-1, at 17, 19).  Quoting *Harding*, Defendants acknowledge that Plaintiffs must have taken

action demonstrating "a clear intent" to waive privilege by injecting their reliance on the advice

of counsel as an issue in the litigation.  (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 26

(quoting *Harding*, 914 F. Supp. at 1096)).  They claim Plaintiffs did this by using the advice of

counsel defense "offensively" when they averred in their fraud claim that they and their attorneys

chose not to exercise Plaintiffs' right to enforce the second settlement agreement in reliance upon

the misrepresentations communicated through the parties' attorneys.  (*Id.* (emphasis omitted)).

The Court disagrees.  As Judge Robreno found, the "essence" of Plaintiffs' fraud claim is

that Defendants "deliberately concealed" their belief that no settlement had been reached, as well

as their continued involvement in the Indian criminal matter, all for the purpose of "lulling"

Plaintiffs' into the belief that the prior civil matter had settled.  (Order, ECF No. 35, at 2).  It is

difficult to see how Plaintiffs could have relied upon their counsel's advice concerning

Defendants' thoughts and allegedly violative acts in India when counsel knew nothing of them.

Further, to the extent that Plaintiffs' SAC references misrepresentations made by Defendants, via

Duane Morris, Plaintiffs have not affirmatively placed at issue any advice from Morgan Lewis

regarding how to proceed in light of these statements.[7]  Rather, their claim only places at issue the statements and actions of Defendants themselves.  In other words, Plaintiffs' claim is that they failed to exercise their rights because of what Defendants, through Duane Morris, stated – and did not state – to Plaintiffs, through Morgan Lewis.  But stripped of these intermediaries, the claim is that Defendants misrepresented and omitted material information to Plaintiffs to defraud them into failing to move to enforce the settlement agreement in this court or to oppose the criminal proceedings in India.  Whatever advice Morgan Lewis may have provided Plaintiffs regarding how to proceed does not change what Duane Morris did or did not say to Morgan Lewis.

Defendants argue that the fraud claim is "premised and dependent" upon privileged communications because Plaintiffs cannot prove justifiable reliance without demonstrating that Plaintiffs' "decision to take no action with the Court following th[e] call[s] [between counsel]

---

[7]  Defendants assert, without citation, that the SAC "makes clear" that the decision not to attempt to enforce the second settlement agreement was "joint[ly]" made between Plaintiffs and their counsel, but the Court cannot find support for this assertion in the pleading.  (*See, e.g.,* SAC, ECF No. 30, at ¶ 144 ("*the BSI parties* relied on the assurances of the OKS parties and their counsel"), ¶ 145 ("*the BSI parties* would have taken action"), ¶ 147 ("*[t]he BSI parties* . . . justifiably relied on Duane Morris' representations") (emphasis added)).

Defendants also point to deposition testimony from Plaintiffs' witnesses that purportedly "reveals Morgan Lewis's mental processes as attorneys in explaining the legal decisions made by them and their clients . . . ."  (Reply, ECF No. 52, at 6-9).  The Court has reviewed the proffered examples and finds them lacking the "clear intent to waive privilege" necessary to place advice of counsel "at issue" in the litigation.  *Harding*, 914 F. Supp. at 1096.  Defendants seize upon the deponents' use of the words "think," "believe," "feel," "expect" and their derivatives, but what matters is whether Plaintiffs took an affirmative step in the litigation to place advice of counsel at issue – such as filing a claim or defense predicated on such advice – not a witness's secondary characterization of the role the advice played in the reliance or decision-making.  *See Rhone-Poulenc*, 32 F.3d at 863; *see also Noonan*, 2019 WL 5722213, at *2 (a party does not place advice of counsel at issue by stating that "she relied on the advice of counsel when asked if she did so at her deposition.  Otherwise, opposing counsel by artful questioning of a witness could easily thwart her attorney-client privilege and the work-product protection.") (internal citations omitted).

was the result of reliance on statements made in the call[s], or for some other reason(s)."
(Memo. in Supp. of Mot. to Compel, ECF No. 44, at 19).  The Court finds this argument
indistinguishable from the one rejected in *Rasby*.  2016 WL 4995036, at *4.  In that case the
defendant, Pillen, contended that he needed the privileged attorney-client communications of the
plaintiff, Rasby, to establish her state of mind when she entered into a purchase agreement
negotiated on her behalf by counsel and to determine whether in entering into it she was
"motivated by legal advice" as opposed to his own fraudulent and other actionable conduct, as
alleged by Rasby.  *Id.*

 The court's analysis in rejecting Pillen's contention that he was entitled to Rasby's
protected communications to test her justifiable reliance and exclude advice of counsel as an
alternative reason for her actions applies equally to this case:

> Here, Rasby placed only Pillen's conduct at issue when she alleged
> fraud and duress. Rasby did not engage in an affirmative act which
> placed her confidential attorney-client communications at issue.
> Although she consulted with counsel, counsel's advice is not at
> issue. Neither is counsel's advice, about Pillen's conduct or the
> Purchase Agreement's soundness, relevant. The facts associated
> with Rasby's claims, including Pillen's alleged conduct, whether
> Rasby sought and received the advice of counsel, and other
> influences on Rasby's state of mind, may be relevant. Pillen has
> means to access such facts, for example by asking Rasby what
> alternatives she considered. Rasby's confidential attorney-client
> communications extend beyond the facts to encompass matters
> sheltered in the interests of justice by an important privilege and
> the ultimate issues for resolution by the jury.

*Id.* at *5.

 Defendants attempt to diminish *Rasby* on the basis that it is from a federal district court in
Nebraska, but *Rasby* applied the Third Circuit's implied waiver standard set forth in *Rhone-
Poulenc*.  *Id.* at *4 (citing *Rhone-Poulenc*, 32 F.3d 862-64).  They further argue that it involved a
business decision that did not place at issue privileged matters like the allegations here that
Defendants fraudulently induced Plaintiffs "into following a certain *litigation strategy*, which, by

definition," placed protected communications "directly at issue." (Reply, ECF No. 52, at 11 (emphasis in original)). However, the attorney-client privilege applies to all qualifying communications made "for the purpose of obtaining or providing *legal* assistance for the client," not strictly *litigation* advice. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). The *Rasby* court necessarily found that Rasby's communications with her counsel about entering the purchase agreement involved legal assistance when it determined that they were protected from disclosure by the attorney-client privilege. *Id.* at *5. If the communications had not transmitted legal advice, they would not have been subject to the privilege in the first place. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d at 359.

The cases cited by Defendants as factually similar are distinguishable from *Rasby*, *Rhone-Poulenc* and this case because in those cases the party claiming protection took an affirmative step to place advice of counsel at issue in the litigation. *See Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515, 536-37 (3d. Cir. 1996) (the plaintiffs, husband and wife, placed advice of counsel at issue by challenging the voluntariness of their execution of an agreement with the defendants, because "the advice of counsel is an explicit, and important, element of the voluntariness analysis") (citation omitted); *Glenmede Trust Co.*, 56 F.3d at 486 ("Glenmede raised reliance on the advice of counsel . . . as an affirmative defense to the Thompson family's claims and voluntarily produced the Opinion Letter and a draft of it in response to discovery requests."); *Avco Corp. v. Turner*, No. 2:20-cv-04073-JDW, 2021 WL 3487321, at *3 (E.D. Pa. Aug. 9, 2021) ("Avco has used confidential communications to prove an element of its claim, and it therefore has placed the substance of the communications at issue."); *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463,471 (D. Del. 2010) (in a patent infringement case, the party asserting privilege waived it by indicating "that they intended to

defend against the claim of inequitable conduct by calling the . . . prosecuting attorneys at trial to testify"); *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 518, 523-24 (D.D.C. 2005) (in a patent infringement case, applying the *Hearn* factors criticized in *Rhone-Poulenc*); *In re G-I Holding Inc.*, 218 F.R.D. 428, 433 (D.N.J. July 17, 2003) (also applying *Hearn* but nonetheless finding that "the party now asserting the privilege took an affirmative act by raising a 'reliance on counsel' defense"); *Harding*, 914 F. Supp. at 1099 (the defendant waived the attorney-client privilege and work-product doctrine by asserting the results of its attorney's investigation as an affirmative defense); *Bird v. Penn Cent. Co.*, 61 F.R.D. 43, 45, 48 (E.D. Pa. 1973) (in an insurance policy rescission case, declining to determine waiver but finding that the work-product doctrine must give way to the defendant's "substantial need" for the documents under Rule 26(b)(3) after the Special Master found that the plaintiffs had "interject[ed]" the advice of counsel conducting the underlying claim investigation "as a reason for not seeking recission sooner"); *cf. Bierman v. Marcus*, 122 F. Supp. 250, 252 (D.N.J. 1954) (ordering a hearing to determine whether privilege was properly invoked in the first place).

This Court's conclusion that Plaintiffs have not waived the attorney-client privilege or work-product doctrine because they have not taken an affirmative step to place protected communications at issue comports with the Third Circuit's concern that "certainty and predictability" regarding waiver be preserved as far as practicable.  *Rhone-Poulenc*, 32 F.3d at 863.  It explained in *Rhone-Poulenc*:

> Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege. That is, in leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege. This certainty and predictability as to the circumstances of a waiver encourage clients to consult

> with counsel free from the apprehension that the communications
> will be disclosed without their consent.

*Id.* at 863-64.

Accordingly, the Court declines to grant Defendants' Motion to Compel on the basis that Plaintiffs waived any applicable privilege by placing their protected communications at issue.

### C.   Selective Disclosure

### 1.   Parties' Arguments

Defendants next argue in their supporting memorandum that "BSI has further waived any claim of privilege by producing partially redacted written communications between Morgan Lewis and BSI, and by allowing deposition testimony regarding 'facts' contained in privileged communications."  (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 27).  Specifically, they claim that Plaintiffs waived the attorney-client privilege and work-product doctrine by producing a partially redacted email among Schweitzer, Sharma and Dorchuck with only a "factual" recounting of the former's telephone call with Duane Morris visible and his "legal impressions and advice regarding that phone call" redacted.  (*Id.*).  Similarly, they contend that Plaintiffs further waived any applicable protection when their counsel drew a "nebulous line" at the Morgan Lewis and Sharma depositions whereby the deponents testified only about "facts" but not attorneys' "mental impressions" or "advice."  (*Id.* at 28).  They accuse Plaintiffs of using "privilege as both a sword and a shield . . . by selectively disclosing *parts* of privileged communications" needed to make out its fraud claim while withholding other parts "that likely contain additional highly relevant information."  (*Id.* at 28 citing *R.D. v. Shohola Camp Ground & Resort*, No. 3:16-CV-1056, 2017 WL 1178050, at *4 (M.D. Pa. Mar. 30, 2017) (quotation omitted) (emphasis in original))).  Defendants insist that "[s]uch partial waiver of privilege is not permitted" and requires complete disclosure of "the entire subject matter of such communications."  (*Id.* (citation omitted)).

In their response, Plaintiffs deny that they have waived privilege by producing factual portions of attorney-client communications or by permitting their witnesses to testify regarding facts.  (Resp., ECF No. 50-1, at 19).  They point out that when they produced the communications – after meeting and conferring about the issue – they reminded Defendants that they were doing so only "in an effort to compromise and avoid dispute with the understanding that the production of the factual statements themselves at the request of Defendants will not be used as a basis for asserting waiver of privilege or work product protection."  (*Id.* (quoting Emails, ECF No. 44, Ex. E)).  Likewise, they note that at Sharma's deposition Defendants' counsel assured him that "there's an agreement that you can testify as to all facts that have been conveyed to you by Morgan Lewis regarding things that were said by Duane Morris or not said by Duane Morris."  (*Id.* (quoting Sharma Dep. Tr., ECF No. 50-10, at 213:6-19)).  They accuse Defendants of a "bait-and-switch" and "playing 'gotcha'" by now claiming that this limited production and deposition testimony constitutes waiver.[8]  (*Id.* at 19-20).

Plaintiffs further contend that Defendants' assertion of waiver is legally incorrect, aside from the parties' agreement.  They observe that the privilege "does not extend to facts provided by an attorney that do not reflect client confidences" and, accordingly, a party may produce them while redacting privileged portions of the same communication.  (*Id.* at 20 (quoting *Samahon v. U.S. Dep't of Just.*, No. 13-6462, 2015 WL 857358, at *10 (E.D. Pa. Feb. 27, 2015); citing

---

[8]  The Court is troubled by these allegations – unrefuted by Defendants – that Plaintiffs voluntarily provided partial documents and limited testimony to resolve the discovery dispute between the parties, only to have Defendants attempt to use that discovery as a basis to claim waiver.  "[L]imited disclosures can serve a worthwhile purpose and, consequently, the law should not discourage parties from voluntarily disclosing confidential communications (unless made for the purpose of achieving a tactical advantage) by adopting a rule of law that causes voluntary disclosures to operate as a waiver of other confidential communications involving the same subject matter."  *See Minatronics Corp. v. Buchanan Ingersoll, P.C.*, 23 Pa. D. & C.4th 1, 11 (Allegheny Com. Pl. Ct. 1995) (Wettick, Jr., J.).  Nonetheless, the Court bases its decision upon other grounds.

*Nupson v. Schnader Harrison Segal & Lewis LLP*, No. 18-cv-2505, 2021 WL 1293557, at *16 (E.D. Pa. Apr. 7, 2021); *Rasby*, 2016 WL 4995036, at *5)). Plaintiffs also point to Defendants' own cited cases permitting producing parties to redact only protected portions of a document while producing the rest. (*Id.* (citing *Utesch*, 2020 WL 7260775, at *7)). In addition, Plaintiffs argue that Defendants' cited cases are distinguishable because, unlike this case, they relate to partial disclosure of *privileged* information, not the non-privileged portion of redacted documents also containing privileged portions. (*Id.* at 21 n.7).

In reply, Defendants deny that the produced portions of the emails at issue included only facts. (Reply, ECF No. 52, at 12-13). They further contend that, in any event, the relevant case law does not "distinguish between the disclosure of mere 'facts' in an otherwise privileged communication and other types of information in such communications." (Reply, ECF No. 52, at 12). Instead, they argue that what matters is whether a party purposefully disclosed protected material in order to advance its case. (*Id.* (quoting *Murray v. Gemplus Int'l, S.A.*, 217 F.R.D. 362, 367 (E.D. Pa. 2003)). They also posit that Plaintiffs waived any applicable protection "by the partial disclosure of privileged communications to their opponents *in this litigation*," which they maintain is a "key distinction" between *Rasby* and *Nupson*, cited by Plaintiffs. (*Id.* at 13 (citations omitted) (emphasis in original)). Defendants further attempt to distinguish these cases on the basis that they did not involve a "selective disclosure" of unfavorable materials. (*Id.* at 14) (citations and quotations omitted)).

In their sur-reply, Plaintiffs reject Defendants' contentions that the production of facts results in privilege waiver if they support the producing party's claims. (Sur-reply, ECF No. 56, at 8). They also refute Defendants' argument that *Nupson* is distinguishable because the disclosure at issue there occurred in a different litigation. (*Id.*). Finally, they accuse Defendants of cherry-picking two of the many attorney-client communications produced by Plaintiffs in a

good faith attempt at resolution of the discovery dispute and mischaracterizing the unredacted

portions as privileged when, in fact, they are strictly factual.  (*Id.* at 9 (citations omitted)).

### 2.    Analysis

Put simply, "[f]acts are discoverable, the legal conclusions regarding those facts are not."

*Rhone-Poulenc*, 32 F.3d at 864.  A party may not "refuse to disclose facts simply because that

information came from a lawyer."  *Id.*  Where "some documents may contain both discoverable

and privileged information it would be appropriate, if not too burdensome, to redact them

accordingly."  *Id.* (citing *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3d Cir. 1984); *In re*

*Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988)); *see also Utesch*, No. 16-5932, 2020

WL 7260775, at *8 ("if Defendants' otherwise responsive, nonprivileged documents contain

some privileged information . . . Defendants may redact those portions of the documents prior to

production").

For these reasons, the Court rejects Defendants' contention that, by providing factual

information in partially redacted, otherwise privileged emails and in response to certain

deposition questions about Plaintiffs' communications with their counsel, Plaintiffs waived

protection over the entire subject matter of the communications.  Providing facts (while

withholding protected information) does not constitute "selective" disclosure; rather, it is

*required*.  *See Rhone-Poulenc*, 32 F.3d at 864.  Nor, as discussed in Section III.B.2, are the

privileged portions of these communications subject to disclosure simply because they may be

relevant.  (*See* Memo. in Supp. of Mot. to Compel, ECF No. 44, at 28 (insisting that Plaintiffs

have engaged in selective disclosure because the withheld parts of the communications "likely

contain additional highly relevant information"); *see also Rhone-Poulenc*, 32 F.3d at 864

("relevance is not the touchstone for determining whether a party has waived the attorney-client

privilege or attorney work product")).  In short, and as Defendants' own cited cases demonstrate,

only disclosure of privileged materials, not facts, may result in waiver.[9]  *Compare Nationwide*

*Mut. Ins. Co. v. Fleming*, 924 A.2d 1259, 1262-63 (Pa. Super. Ct. 2007), *alloc. granted* 935 A.2d

1270, 594 Pa. 311 (2007), *aff'd by an equally divided court*, 992 A.2d 65, 605 Pa. 468 (2010)

(the disclosed documents "were *not* protected by attorney-client privilege and therefore, as a

matter of law, they could not form the basis for a subject matter waiver of attorney-client

privilege") (emphasis in original) *with R.D. v. Shohola Camp Ground & Resort*, No. 3:16-CV-

1056, 2017 WL 1178050, at \*3 n.1 (M.D. Pa. Mar. 30, 2017) (the disclosure of a portion of a

privileged interview resulted in a waiver of privilege as to the entire interview), *Murray*, 217

F.R.D. at 367 ("Gemplus waived its attorney-client privilege with regard to the scope of the

*otherwise-privileged* documents it disclosed to Plaintiff") (emphasis added), *and In re Leslie Fay*

*Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 282-83 (S.D.N.Y. 1995) (the production of a privileged

report waived the privilege as to the underlying documents).

      Finally, Defendants argue that the disclosed material is not, in actuality, limited to facts.

(Reply, ECF No. 52, at 12).  They parse the March 27 and April 7, 2020, emails between

Plaintiffs and their counsel and claim that the communications disclosed therein regarding the

---

[9]  *Rasby*, cited by Plaintiffs, bears out this distinction as well.  2016 WL 4995036, at \*5 (refusing to find waiver because Rasby "concealed the confidential communications" and only "provided emails and parts of emails containing unprivileged facts and communications intended to be sent to outside parties").  Defendants attempt to draw a distinction between *Rasby* and this Court's decision in *Nupson*, also cited by Plaintiffs, on the basis that the former involved a disclosure in the same litigation, whereas the latter involved an earlier disclosure in a separate litigation.  (Reply, ECF No. 52, at 13).  The Court cannot discern the import of the distinction drawn by Defendants.  Neither this Court in *Nupson*, nor the *Rasby* court, found that waiver applied.  *Nupson*, 2021 WL 1293557, at \*15; *Rasby*, 2016 WL 4995036, at \*5.  Further, this Court declined to find waiver in *Nupson* for multiple reasons, only one of which was that disclosure was made in a prior litigation.  2021 WL 1293557, at \*15.  There is no dispute that the disclosures at issue here occurred "in this litigation," but that fact is not dispositive of waiver.  (*See* Reply, ECF No. 52, at 13; *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 378 ("a party is only forced to produce documents under a prospective waiver theory if it agrees to disclose only favorable privileged documents while keeping for itself the unfavorable ones to gain an advantage in litigation") (citations omitted)).

status of the settlement agreement and its execution divulged Morgan Lewis's "legal opinion[s]" and "mental impressions." (*Id.* at 13). As Plaintiffs note, however, these factual statements largely mirror those made to Judges Baylson and Strawbridge in the parties' jointly submitted March 10, 2020, letter. (Ltr. to J. Baylson and J. Strawbridge, ECF No. 30-2, at 1 ("[T]he Parties have finalized a settlement agreement. The parties are in the process of executing that settlement agreement . . . .")). Defendants also grasp at Schweitzer's statements in the April 7, 2020, email that Duane Morris had made it "clear" that they were "extremely annoyed" with Defendants' Indian counsel over the delays and that Schweitzer himself found the delays "disappointing." (Emails, Mot. to Compel, Ex. K, at 1). However, the former statement merely communicated information from opposing counsel, and the latter statement was part of a four-word snippet introducing the aforementioned status update regarding what had – or had not – occurred concerning execution of the settlement agreement, as told by Duane Morris. (*Id.* (stating that "[i]n a disappointing development," Duane Morris had been "trying to get India counsel on the same page") (internal quotations omitted)). The Court declines to find subject matter waiver based upon these decontextualized fragments of larger statements conveying facts.

Accordingly, the Court rejects Defendants' assertion that Plaintiffs' have waived the attorney-client privilege and work-product doctrine by selectively disclosing protected communications and other materials.[10]

---

[10] Defendants' opening memorandum also includes three short sections with the headings: (1) "BSI Should Be Compelled to Produce the Written Discovery Withheld on the Basis of Privilege"; (2) "BSI Should Be Compelled to Answer Information Requested During Depositions that Was not Provided on the Basis of Claimed Privilege"; and (3) "BSI Should Be Compelled to Produce Its Internal Counsel Jordan Dorchuck for Deposition." (Memo. in Supp. of Mot. to Compel, ECF No. 44, at 30-31). The purpose of these sections appears to be to request formally the discovery flowing from Plaintiffs' alleged waiver of the attorney-client privilege and work-product doctrine. (*See id.*). However, because the Court holds that no waiver occurred, it does not separately address Defendants' requests for this discovery. In light of the Court's holding, it also finds it unnecessary to address Plaintiffs' contention that it was

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel is denied.


BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

prejudiced by Defendants' purported delay in filing its motion or Plaintiffs' contentions
regarding Defendants' failure to notice Dorchuck's deposition.  (Reply, ECF No. 50-1, at 22-25).