**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SERVIS ONE, INC, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No.: 20-cv-4661** |
| | : | |
| **OKS GROUP INTERNATIONAL PVT.** | : | |
| **LTD., et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                 **February 28, 2022**

Presently pending before the Court is Defendants' Motion to Exceed Seven Hours of

Deposition Testimony for Nonparty Witness Kelly Bonner and to Enforce Deposition Subpoena

for Nonparty Witness Brian Slipakoff (ECF No. 65) and nonparty Duane Morris LLP's response

in opposition.  (ECF No. 70).[1]  For the reasons that follow, Defendants' motion shall be

**GRANTED in part** and **DENIED in part**.


**I.       RELEVANT BACKGROUND[2]**

In July of 2018, the parties agreed to a global settlement of all claims against each other,

including criminal proceedings in India against Plaintiffs.  (Resp., ECF No. 70, at 4).  In August

of 2019, Plaintiffs filed suit in this Court to enforce the settlement (*BSI v. OKS I*).  (*Id.*).

---

[1]  The Honorable Eduardo C. Robreno referred the matter to me for disposition pursuant
to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 48).

[2]  For additional background, see Judge Robreno's March 24, 2021 memorandum
accompanying his Order of even date granting in part and denying in part Defendants' motion to
dismiss.  (Memo., ECF No. 26, at 2-6).  The instant memorandum includes only factual and
procedural history pertinent to this dispute.

Defendants were represented by Duane Morris partner Steven Friedman and associate Kelly Bonner. (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 4). In their answer to the complaint, Defendants asserted that the settlement was unenforceable due to a mutual mistake of law, namely, the erroneous belief that Defendants could cause the termination of the Indian criminal proceedings. (Resp., ECF No. 70, at 4).

Between December of 2019 and February of 2020, the parties attempted to negotiate a resolution to this alleged impediment to settlement. (*Id.*). Plaintiffs initially proposed modifying the relevant section of the agreement, Section 2, to refer only to them, thereby removing any obligation for Defendants to cause the termination of the Indian criminal proceedings. (*Id.*). Defendants responded by proposing an additional "caveat" stating that nothing in the agreement should be interpreted as Defendants' consent to withdraw or terminate the proceedings. (*Id.*). Plaintiffs countered by offering to delete Section 2 – and thus any reference to either side withdrawing or terminating the criminal proceedings – in its entirety. (*Id.*). Instead, they proposed making their settlement payment and the complete termination of the United States proceedings conditional on their ability to terminate the Indian criminal proceedings without any action taken by Defendants. (*Id.* at 5). Plaintiffs also required mutual releases of all claims and the right to void the settlement if the criminal proceedings were not terminated. (*Id.*).

Duane Morris counseled[3] Defendants to accept Plaintiffs' proposal and subsequently communicated Defendants' purported acceptance to Plaintiffs and the Court on March 10, 2021. (*Id.*). Friedman and Bonner testified at their depositions that Defendants authorized them to make these communications. (*Id.*). Defendants deny that they ever accepted the agreement or

---

[3] To defend themselves in this case, Defendants have waived the attorney-client privilege and work-product doctrine for the December 1, 2019 to September 1, 2020 timeframe. (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 2).

authorized Duane Morris to make any such representations.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 4; Resp., ECF No. 70, at 5).  Defendants and Duane Morris also dispute whether Duane Morris ever informed Defendants that it had made these communications regarding settlement.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 13).  Defendants never executed the settlement agreement.  (Resp., ECF No. 70, at 5).

In late June of 2020, Slipakoff replaced Bonner as the associate working with Friedman after Bonner took maternity leave.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 18).  On July 23, 2020, Duane Morris informed Vinit Khanna, CEO of the corporate defendants, that if Defendants intended to challenge the existence of a binding settlement agreement it could not represent them because Duane Morris attorneys would become fact witnesses in the matter.  (Resp., ECF No. 70, at 5).  Khanna responded that Defendants would obtain new counsel.  (*Id.* at 6).  The following day Duane Morris confirmed the termination of representation in a letter to Defendants.  (*Id.* at 5-6).

On June 15, 2021, in response to a subpoena, Duane Morris produced several thousands of pages of communications between its attorneys and Defendants and between its attorneys and Plaintiffs.  (*Id.* at 8).  On September 14, 2021, Defendants issued subpoenas for Friedman's and Bonner's depositions.  (Subpoenas, ECF Nos. 65-7, 65-8).  During the subsequent email exchange regarding scheduling, Defendants stated its position that it should receive a full seven hours of deposition time with each witness but agreed to split the time equally with Plaintiffs, without waiver of its position that it required additional time as well as a deposition of Slipakoff.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 2, 6).  The parties deposed Bonner on October 18, 2021, for seven hours, not including breaks.  (*Id.* at 7; Resp., ECF No. 70, at 6).  After the deposition, all involved agreed to table the issues regarding further time with Bonner and a

deposition of Slipakoff until after Friedman's deposition, with the parties again splitting the time equally.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 7).

The deposition of Friedman on December 22, 2021, lasted between six and seven hours, not including breaks.  (Resp., ECF No. 70, at 6).  Following the deposition, Defendants advised that they required no additional time with Friedman but that they still wanted to depose Bonner for up to an additional three and a half hours.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 7).  They also served a subpoena for the deposition of Slipakoff.  (*Id.* at 2, 7).  On December 28, 2021, the parties exchanged emails regarding the need for Slipakoff's deposition.  (Dec. 28-29, 2021 Emails, ECF No. 70-1).  Defendants offered to forego his deposition if Plaintiffs could guarantee that they would not call him as a witness or introduce any evidence from him.  (*Id.*).  Plaintiffs maintained that they had no intention to do so, but reserved the right to call him to rebut arguments made by Defendants.  (*Id.*).  Thus, Defendants continued to insist upon his deposition.  (Dec. 30, 2021 Email, ECF No. 70-2).

Duane Morris ultimately informed Defendants that it would not produce either Bonner or Slipakoff for any additional deposition time.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 7).  Defendants and Duane Morris agreed that both issues should be raised in the instant motion rather than requiring the latter to file a separate motion to quash the subpoena issued to Slipakoff.  (*Id.* at 8).  Accordingly, Defendants filed this motion to exceed seven hours of deposition time for Bonner and to enforce the subpoena issued to Slipakoff.  (Dep. Mot., ECF No. 65).  Duane Morris filed its response in opposition on January 21, 2022.  (Resp., ECF No. 70).  Plaintiffs have not taken a position as to the dispute.

II.   **LEGAL STANDARD**

    A.    **Exceeding Normal Deposition Duration**

Federal Rule of Civil Procedure 30(d)(1) provides: "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." FED. R. CIV. P. 30(d)(1).  In turn, Rule 26(b)(1) states in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

> Further, Rule 26(b)(2)(C) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

>> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C).

Because Rule 30(d)(1) "imposes a presumptive durational limitation of one day of seven hours for any deposition," "[t]he party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." FED. R. CIV. P. 30(d) advisory committee's note to 2000 amendment. "'The determination of whether good cause exists is fact specific.'" *Saeed v. Cnty. of Nassau*, No. CV 09-3314, 2011 WL 6945755, at *1 (E.D.N.Y. May 23, 2011) (quoting *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514, 2008 WL 2224288, at *8 (S.D.N.Y. May 29, 2008)).

## B.    Quashing a Subpoena[4]

As an initial matter, a subpoena served under Rule 45 must fall within the scope of proper discovery under Rule 26(b)(1). *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. Mar. 21, 2016); *Sinclair Cattle Co. v. Ward*, No. 14-CV-1144, 2015 WL 6167488, at *1 (M.D. Pa. Oct. 20, 2015). If the subpoena is within the general scope of discovery, then the burden shifts to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena. *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. May 15, 2014). Under Rule 45(d)(3), the court is required to quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

---

[4] The Court recites the standard for quashing a subpoena because Duane Morris seeks this relief in its response to Defendants' motion, as agreed between Duane Morris and Defendants, in lieu of filing its own affirmative motion. (*Id.* at 8; Resp., ECF No. 70, at 17-19).

Fed. R. Civ. P. 45(d)(3)(A).  The person or entity opposing the subpoena bears a "heavy burden" of demonstrating that an enumerated need for quashing the subpoena exists.  *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012).

## III.    DISCUSSION

### A.    Extending Bonner's Deposition

#### 1.    Parties' Arguments

Defendants proffer five bases for extending the deposition of Bonner.  First, they maintain that they did not receive "the presumptive seven hours of deposition questioning time" because they had to split the deposition with Plaintiffs, which had interests adverse to Defendants with respect to Bonner and therefore engaged in other lines of questioning.  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 12-13).  In support of this claim, they point out that the Advisory Committee's notes to the 2000 amendment to Rule 30(d)(1) cites "multi-party cases" as an instance in which exceeding seven hours of deposition time may be permissible.  (*Id.* at 12 (citing FED. R. CIV. P. 30(d) advisory committee's note to 2000 amendment)).  Second, they posit that Bonner is "the critical witness" in the case because she "took the lead in drafting and sending not just most but virtually all the many written email communications from Duane Morris back and forth with BSI and OKS" and, along with Friedman, represented to the Court that Plaintiffs were in the process of executing a final settlement agreement with Defendants when, according to Defendants, this was untrue.  Defendants seek to depose her further about these communications and representations, which also serve as the bases for Plaintiffs' breach of contract and fraud claims.  (*Id.* at 14).

Third, Defendants insist that, other than at Bonner's deposition, they have "never had a chance to question her" about this subject matter because Duane Morris has "instead routed everything through its counsel . . . ." (*Id.*).  According to Defendants, communications with Bonner through counsel are "hardy an adequate substitute" for directly reviewing with her the many communications she had with the parties in this matter.  (*Id.* at 14-15).  Fourth, they contend that "the sheer volume of documents sent or received by Ms. Bonner" during the relevant timeframe serves as sufficient reason to allow Defendants additional time to depose her. (*Id.* at 15).  Defendants complain that at Bonner's deposition Plaintiffs presented her with 39 exhibits about which Defendants did not have the opportunity to question her, that they had the opportunity to question her only "briefly" about other exhibits, such as internal Duane Morris memoranda and the July 24, 2020 termination of representation letter, and that there are other unspecified documents not marked as exhibits by either party about which they wish to question Bonner.  (*Id.*).

Fifth, Defendants claim that they did not have the opportunity to address with Bonner five "critical topics," including:

1. Whether Duane Morris informed Defendants that Plaintiffs had rejected the addition of a "caveat" that nothing in the settlement agreement would be construed as Defendants' consent to withdraw or terminate the Indian criminal proceedings;

2. The meaning of a provision that if the Indian criminal proceedings went forward the agreement would be "voidable" by Plaintiffs, rather than "void" as stated by Duane Morris in an email describing the agreement;

3. Whether Defendants needed to read the agreement closely or could instead rely upon Duane Morris to do so;

4. Whether, and if so how and when, Duane Morris explained to Defendants that notwithstanding the removal of any obligation for them to withdraw the criminal complaint the agreement would still state that Defendants released those proceedings; and

     5.   Duane Morris's statements to Plaintiffs and the Court on March 10 and 12, 2020, that the parties had finalized the agreement.

(Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 16).

Defendants submit that for these reasons they have established good cause under Rule 30(d)(1) and, by reference therein, Rule 26(b)(1) and (2).  (*Id.* at 17).  They maintain that, in light of Duane Morris's position that they authorized then surreptitiously breached the settlement agreement, it is necessary to develop "a full explication in defense by OKS of the history of miscommunications between Duane Morris and OKS" regarding it.  (*Id.* at 18).  They argue that under the circumstances further deposition of Bonner is "entirely appropriate and not burdensome" to either her or Duane Morris.  (*Id.*).

Duane Morris counters that Defendants have not carried their burden of demonstrating good cause or otherwise showing that fairness considerations dictate forcing Bonner to appear again for deposition.  (Resp., ECF No. 70, at 15).  It asserts that the core issue in this matter – whether Defendants authorized Duane Morris's acceptance of the settlement agreement on its behalf – is narrow and focused on a limited time period in early 2020.  (*Id.*).  It points out where in Bonner's and Friedman's deposition transcripts Defendants questioned these deponents about the five topics listed above.  (*Id.* at 8-9).  It contends that Defendants' inability to "identify a meaningful topic on which they have not already had the opportunity to question" Bonner demonstrates that they are not entitled to additional time with her.  (*Id.* at 10).  Duane Morris observes that every other deponent in this matter – with the exception of Khanna, who was deposed in his individual capacity and again as Defendants' corporate designee – has had his or her deposition completed within the presumptive seven-hour time limit.  (*Id.*).  It rejects as irrelevant Defendants' contention that they have not had the opportunity to interview Bonner and

9

Friedman apart from their depositions, noting that the seven-hour limit would be "a dead letter" if a party could simply circumvent it by pointing out that the witness did not also voluntarily appear to be interviewed separate from the deposition.  (*Id.*).

Duane Morris further observes that the depositions of Bonner and Friedman have generated over 700 pages of testimony – 365 pages and 349 pages, respectively – in response to essentially the same questions and that their testimony has been consistent.  (*Id.* at 15-16).  It cites two cases from the Central District of California for the proposition that a deposition should not be extended where the movant has already deposed the witness on the relevant topic and additional questioning will not turn up new evidence previously unavailable to the party.  (*Id.* at 15-16 (citing *Degui Chen v. Jung*, No. CV 18-2015-R, 2019 WL 1957956, at *2 (C.D. Cal. Feb. 25, 2019); *Reinsdorf v. Sketchers U.S.A., Inc.*, No. CV 10-07181, 2012 WL 12883889, at *3 (C.D. Cal. May 9, 2012))).  It distinguishes the Advisory Committee note to Rule 30 stating that cases in which multiple parties question a single witness "**may**" warrant exceeding seven hours on the basis that this matter does not involve numerous parties, different theories of liability and defenses, or different factual issues.  (*Id.* (emphasis added by Duane Morris)).  On the contrary, Duane Morris maintains, this case involves effectively two parties, who "appropriately focused their deposition questions on the core dispute, which is whether OKS authorized the acceptance of the settlement agreement in February and March of 2020."  (*Id.*).  In its view:

> Far from militating in favor of a deposition in excess of seven hours, the fact that counsel for both sides had equal time to elicit the relevant knowledge of both Ms. Bonner and Mr. Friedman on the material facts should give the Court full confidence that the parties have carefully explored Ms. Bonner's knowledge of the facts and are ready to proceed with motion practice or trial without any further deposition testimony by Ms. Bonner.

(*Id.* at 16).

2.     **Analysis**

The Advisory Committee notes to the 2000 amendment to Rule 30(d) state: "Parties

considering extending the time for a deposition—and courts asked to order an extension—might

consider a variety of factors." FED. R. CIV. P. 30(d) advisory committee's note to 2000

amendment.  The notes list six factors, including one that Defendants highlight here: "In multi-

party cases, the need for each party to examine the witness may warrant additional time,

although duplicative questioning should be avoided and parties with similar interests should

strive to designate one lawyer to question about areas of common interest." *Id.*  These six factors

"are examples that the Court, may consider, among others, in determining whether an extended

deposition is warranted," but this list is not exhaustive.  *Indianapolis Airport Auth. v. Travelers*

*Prop. Cas. Co. of Am.*, No. 1:13–cv–01316–JMS–TAB, 2015 WL 4458903, at *3 (S.D. Ind. July

21, 2015).  For instance, as Defendants note, "[g]ood cause has also been found where the

subjects covered in the deposition were particularly fact-intensive or document-heavy . . . ."

*Scott v. Multicare Health Sys.*, No. C18-0063-JCC, 2019 WL 1505880, at *1 (W.D. Wash. Apr.

5, 2019) (citation omitted); *cf.* FED. R. CIV. P. 30(d) advisory committee's note to 2000

amendment (a failure by the witness to review voluminous or lengthy documents provided to

him or her in advance of the deposition, resulting in delays at the deposition, may serve as a basis

to extend it).  However:

> [e]ven if good cause is found, the court must limit the additional
> time if it determines that the party seeking additional discovery has
> had ample opportunity to obtain the information, the burden of the
> proposed discovery outweighs its likely benefit, the discovery is
> unreasonably cumulative or duplicative, or it can be obtained
> through "some other source that is more convenient, less
> burdensome, or less expensive."

*United States v. City of Evansville*, No. 3:09–cv–00128–WTL–WGH, 2012 WL 3867134, at *1 (S.D. Ind. Sept. 5, 2012) (quoting FED. R. CIV. P. 26(b)(2)(C)).

This matter, although involving multiple plaintiffs and defendants, is not the typical "multi-party" case because there are only two sides. Plaintiffs share uniform interests and counsel, as do Defendants. Nonetheless, the reason for considering additional deposition time in multi-party cases – "the need for each party to examine the witness" – is present here. FED. R. CIV. P. 30(d) advisory committee's note to 2000 amendment. Because Bonner is a nonparty, Defendants were required to split her deposition equally with Plaintiffs and thus only deposed her for three and a half hours. If Bonner had also been a Plaintiff, or under the control of a Plaintiff, Defendants could have deposed this adverse witness for a full seven hours.

Duane Morris maintains that further time with Bonner is unwarranted because she already generated well over 300 pages of deposition testimony, in addition to a similar amount of testimony from Friedman on largely identical topics. (Resp., ECF No. 70, at 15-16). It points out where in the two attorneys' deposition transcripts they testified about the subject areas that Defendants allegedly still need to explore with Bonner. (*Id.* at 7-9). But it does not dispute that Bonner's testimony is critical to the central issue in this litigation of whether Defendants accepted the settlement agreement and authorized counsel to communicate that acceptance to Plaintiffs and the Court. Thus, it should come as no surprise that she (and Friedman) testified at length about this and related topics. If Defendants had had the usual seven hours to depose Bonner, as each side has normally enjoyed with adverse witnesses in this matter,[5] they

---

[5] Duane Morris observes that all other deponents, with the aforementioned exception of Khanna, testified for no more than seven hours. (Resp., ECF No. 70, at 10). However, it ignores the fact that only the depositions of Bonner and Friedman were split between the parties. (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 17 n.10).

undoubtedly would have elicited even more testimony on these important topics. Moreover, roughly half of the testimony obtained from Bonner was in response to questioning by counsel for Plaintiffs, who obviously have goals and motivations contrary to Defendants'. Therefore, even if Plaintiffs' counsel also covered the relevant topics with Bonner, it would be inappropriate to treat this questioning the same as questioning by Defendants.[6]

Accordingly, the Court finds that Defendants have established good cause because additional time "is needed to fairly examine the deponent . . . ." FED. R. CIV. P. 30(d)(1). The two Central District of California cases cited by Duane Morris do not persuade the Court otherwise. In *Degui Chen*, the movant sought to depose two nonparty witnesses further about what each discussed with his or her attorney on a break in the original depositions, even though the movant's attorney had already questioned each about such discussions and "neither stated that they discussed any substantive information with counsel, and both affirmatively stated that they had not been instructed on how to answer or otherwise coached on their testimony." 2019 WL 1957956, at *2. Thus, unlike in this case, there was simply "no basis for believing" that either witness would possibly provide any additional relevant information on the topic if they were re-deposed. *Id.* Similarly, in *Reinsdorf*, the movant's attorney "could not 'say with any degree of certainty' what additional information needed to be obtained from [the deponent]," even though the movant had already deposed him for eight and a half hours (i.e., 90 minutes

---

[6] Indeed, the Advisory Committee notes suggest minimizing the need for additional time by avoiding "duplicative questioning" and having "parties with similar interests . . . strive to designate one lawyer to question about areas of common interest." FED. R. CIV. P. 30(d) advisory committee's note to 2000 amendment. Here, Defendants maintain that their counsel "engaged in very little if any duplicative or redundant question[s] and used the time very efficiently." (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 13). However, the parties opposing interests made it impossible to ask questions via a single attorney and underscores why Plaintiffs' counsel's time with Bonner is not properly attributable to Defendants, even if there are not a multiplicity of factual issues or theories of liability and defenses to be covered with her.

beyond that authorized by Rule 30(d)(1)).  2012 WL 12883889, at *3.  In this case, Defendants have only deposed Bonner for three and a half hours (i.e., half of the limit contemplated by Rule 30(d)(1)), and they have identified – although disputed by Duane Morris – specific areas of inquiry for which they claim additional information is required.

Nonetheless, even where good cause exists to extend a deposition, "the court must limit the additional time if it determines that" any of the circumstances set forth in Rule 26(b)(2)(C) are present.  *City of Evansville*, 2012 WL 3867134, at *1.  Here, Defendants have had some opportunity to obtain the information at issue, in that they have already deposed Bonner for three and a half hours and Friedman for a similar amount of time.  Accordingly, there is a risk of cumulative or duplicative testimony, particularly if they are permitted to depose Bonner at length.  Although Defendants may benefit from this additional testimony, the Court must also weigh this benefit against the burden on Bonner and Duane Morris of requiring her to appear for deposition in excess of the "durational limit" contemplated by Rule 30(d)(1).  FED. R. CIV. P. 30(d) advisory committee's note to 2000 amendment.  This concern is heightened by their status as nonparties.  *See Avago Techs. U.S., Inc. v. IPtronics, Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015) ("Broader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience.") (citation omitted).  Thus, considering these factors, the Court finds it appropriate to require Bonner to appear for three additional hours of deposition, to be split equally again by Plaintiffs and Defendants.

**B.    Slipakoff's Deposition**

**1.    Parties' Arguments**

Defendants also seek the deposition of Slipakoff, the Duane Morris associate who

replaced Bonner on *BSI v. OKS I* in late June of 2020 after she took maternity leave.[7]  They seek

to depose him "about his knowledge of the facts relevant to this action that he learned during the

time he worked on *BSI v. OKS I* either from review of documents or communications with Ms.

Bonner or Mr. Friedman."  (Memo. in Supp. of Dep. Mot., ECF No. 65-1, at 19).  Allegedly key

documents and communications include May 12 and July 2, 2020 drafts of an internal transition

memorandum authored by Bonner and later provided to Slipakoff on May 18, 2020,[8] as well as

July 16 and 23, 2020 telephone calls Slipakoff and Friedman had with Khanna.  (*Id.*).

Defendants claim that although the memorandum purportedly recounts in detail the history of the

legal representation, including settlement discussions, it omits "the critical fact" that Friedman

advised the Court on March 10, 2020 that the parties had finalized and were executing a

settlement agreement and misstates that the subsequent dismissal was "without prejudice."  (*Id.*

at 19 & n.13).  Defendants maintain that the omission in the transition memorandum regarding

the March 10, 2020 communication is "even more noteworthy" in light of Plaintiff's counsel's

July 20, 2020 email to Friedman taking issue with his reference to the settlement as a "draft."

(*Id.* at 19).  Accordingly, they wish to depose Slipakoff about "this glaring discrepancy" as well.

(*Id.* at 20).

Duane Morris responds that, in light of the depositions of Bonner and Friedman,

Defendants have already "had an ample opportunity to obtain the information" and that

Slipakoff's deposition would be duplicative, unreasonably cumulative, and not proportional to

the needs of the case.  (Resp., ECF No. 70, at 17 (citing FED. R. CIV. P. 26)).  It points out that

---

[7]  Defendants note that he was copied on emails relating to the matter as early as April 22, 2020.  (*Id.* at 19).

[8]  Defendants indicate that Plaintiffs have not produced a version of the memorandum dated May 18, 2020.  (*Id.*).

15

Slipakoff took over Bonner's role in the representation after the relevant period for approximately one month and that his knowledge of the case before becoming directly involved was based primarily on the May 18, 2020 transition memorandum, which Bonner sent to Friedman in addition to Slipakoff.  (*Id.*).  It notes that Friedman was also on the July 16 and 23, 2020 calls with Khanna.  (*Id.* at 11).  It insists that Defendants do not need a deposition to explore the difference between a dismissal with and without prejudice, particularly where Slipakoff was not involved with the March 10, 2020 letter to the Court advising it of the purported settlement.  (*Id.*).  Defendant also argues that as a nonparty it would be inappropriate to require it to produce another witness to testify on the same subject matter as the earlier two witnesses.  (*Id.* at 18).  Further, it contends that it "makes no legal, practical or economic sense" and would be disproportionate to require the deposition of a third Duane Morris attorney who "will never be called as a rebuttal witness in this action because there is no reason to believe that he has any knowledge of relevant facts beyond those known and testified to by Ms. Bonner and Mr. Friedman."  (*Id.*).

### 2.    Analysis

As a threshold matter, a Rule 45 subpoena must accord with Rule 26(b)(1), which requires that the discovery sought be relevant and proportional, considering the importance of the issues and of the discovery in resolving them, the amount at stake, the parties' access to information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  FED. R. CIV. P. 26(b)(1); *Green*, 314 F.R.D. at 169; *Sinclair Cattle Co.*, 2015 WL 6167488, at *1.  Further, the Court must remain mindful of Duane Morris's status as a nonparty, which may warrant "[b]roader restrictions" than would be applicable to discovery from a party.  *See Avago Techs. U.S., Inc.*, 309 F.R.D. at 297.

Here, the Court finds that the information sought – which primarily concerns Duane Morris's internal summaries of its representation of Defendants and communications with them regarding the termination of representation after they indicated an intention to challenge the settlement agreement – is relevant.  However, a full seven-hour deposition of Slipakoff would not be proportional to the needs of the case.  His involvement postdated by over three months the most important issue in this case: whether Defendants authorized Duane Morris to accept the settlement agreement on their behalf and to communicate that acceptance to the Court.  As such, his deposition will not help to resolve that issue.  Further, Defendants have had access elsewhere to the information they seek from Slipakoff.  They cite three communications – the May 18, 2020 transition memorandum and the July 16 and 23, 2020 telephone calls with Khanna – with which Slipakoff was involved, but they have already deposed the author (Bonner) and other recipient (Friedman) of the memorandum, as well as the partner (Friedman) on the calls.  It is unlikely that Slipakoff has additional information about the memorandum beyond that provided by its author (or other recipient) or about the calls beyond that provided by the partner supervising him.  Thus, the burden of requiring Duane Morris, a nonparty, to produce a third attorney-witness for a full day of deposition outweighs the likely benefit from Slipakoff's largely redundant testimony.

Nonetheless, a limited deposition of Slipakoff is appropriate and would be proportional. Slipakoff served as the primary, and apparently sole, associate representing Defendants in the few weeks leading up to the termination of representation.  This period may not have included the key communications with Plaintiffs and the Court at issue, but it coincided with the end of the relationship between Duane Morris and Defendants after it became apparent that the latter intended to challenge the former's authorization to bind them to the settlement agreement.

Defendants had the opportunity to depose Friedman, who represented Defendants through the conclusion of the relationship, about this period, but Slipakoff, as the other attorney on the matter, may have additional information. Accordingly, the Court will permit a three-hour deposition of Slipakoff, to be split equally between Plaintiffs and Defendants and limited to the period beginning in late June of 2020 when Slipakoff replaced Bonner as the associate working on *BSI v. OKS I.*

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part. Within 14 days, Duane Morris shall produce: (1) Kelly Bonner for a three-hour deposition and (2) Brian Slipakoff for a three-hour deposition limited to the period beginning in late June of 2020, with each deposition to be split equally between Plaintiffs and Defendants. Defendants' motion is otherwise denied.

BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge