**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SERVIS ONE, INC. d/b/a BSI** | : | **CIVIL ACTION** |
| **FINANCIAL SERVICES, INC, BSI** | : | |
| **FINANCIAL HOLDINGS, INC.,** | : | |
| **ENTRA SOLUTIONS PVT. LTD.,** | : | |
| **and GAGAN SHARMA** | : | |
| | : | |
| **v.** | : | |
| | : | **NO.  20-4661** |
| **OKS GROUP, LLC, OKS GROUP** | : | |
| **INTERNATIONAL PVT. LTD.,** | : | |
| **and VINIT KHANNA** | : | |

# MEMORANDUM with POST-TRIAL
# <u>FINDINGS OF FACT and CONCLUSIONS OF LAW</u>

**KEARNEY, J.**                                                    **December 27, 2023**

Trial lawyers admitted to practice in this Court balance their sworn duties to the Court and clients. They are always aware their client and not the lawyer decides whether to settle the client's civil dispute or plea to a criminal charge rather than go to trial. Lawyers cannot hope the client will later agree to terms the lawyer deems advisable when they decide to tell opposing counsel and the Court of a final settlement agreement. The lawyer is the agent for the client. The client must authorize the lawyer agreeing to the settlement terms.

We today issue findings of fact and conclusions of law following our evaluation of ninety trial exhibits and witness credibility in a bench trial. We find a client based in India did not expressly authorize its lawyers to settle a case in this Court under terms defined in a March 10, 2020 settlement agreement days before COVID-19 shut down office operations. The India client's Chief Executive Officer can be kindly described as uncertain and not credible in several aspects of his testimony. But the lawyers knew this; their client changed its mind a year earlier on a very

similar settlement, offered ideas, and then would become non-responsive to its lawyers from time to time. The India client would rely on advices from an India criminal lawyer involved in most but not all discussions. The Philadelphia lawyers grew frustrated with their India client's shifting views as the parties prepared to appear before Judge Strawbridge for a settlement conference while COVID-19 approached the East Coast in mid-March 2020. The evidence confirms the India client (urged by its India criminal lawyer) wanted to make sure of certain language in the settlement agreement it thought necessary to protect its rights in criminal proceedings in India. Its Philadelphia lawyers found its India client's proposal futile based on earlier discussions with opposing counsel. The client may have approved some version of earlier terms for a day or so but then quickly changed course and asked for a couple more days to review the draft settlement agreement with its Indian counsel in early March 2020. Its Philadelphia lawyers did not object to the India client's request for more time. But then its Philadelphia lawyers, facing a deadline for filing a mediation statement with Judge Strawbridge (believing the deadline to be non-negotiable) and the pandemic onset, admittedly "jumped the gun" and decided to tell the Court the parties settled their dispute in mid-March 2020. The India client's Philadelphia lawyers decided they reached the best deal available given their view of the client's unlikelihood of trial success. The India client did not agree and told its Philadelphia lawyers it wanted more time to think about it. The Court relied on the settlement notice of the parties reaching a final agreement and dismissed the case with prejudice. COVID-19 mitigation then affected timely judicial and business operations.

The opposing party kept waiting for signed documents. It mistakenly thought the India adversary finally consented. So it did not move to enforce the settlement or ask to vacate the dismissal. It could have and then asked for a date certain trial. It instead waited several months

during COVID-19 mitigation. The India client later learned its Philadelphia attorneys agreed to settle and dismiss the case with materially disputed language to which it did not agree. The Philadelphia lawyers did not move to vacate the dismissal; they instead chose to end their relationship with the India client. We lack evidence the India client's Philadelphia attorneys ever told their client of their consent to the dismissal of the case based on a final settlement confirmed in a March 10 draft agreement.

The opposing parties eventually chose to sue rather than return to trial in their earlier case. They now ask we declare the parties agreed to defined terms memorialized in an unsigned March 10, 2020 settlement agreement based on the India client's Philadelphia attorneys' consent.

We evaluated witness credibility from the experienced lawyers and the India client's Chief Executive Officer in a non-jury trial. We find the India client's Chief Executive Officer incredible as to recollections before March 2020 but the documents confirm its lawyers knew of and did not object to its specific request for more time in early March 2020 and the client's repeated demand for language to allegedly protect its rights in India criminal proceedings. Its Philadelphia lawyers admittedly jumped the gun facing a mediation memo deadline (which they thought could not be modified for undescribed reasons) and COVID-19 when they did not have the client's express authority to settle the client's case consistent with the terms in a March 10, 2020 draft agreement.

We cannot grant the admittedly frustrated opposing party's requested relief of declaring the parties reached a settlement according to terms defined in a March 10, 2020 draft settlement agreement. We appreciate the adversary's quandary. But it could have moved to vacate and moved to trial. It chose instead to file this case seeking declaratory relief.

We grant judgment in favor of the Defendants on Plaintiffs' counts for declaratory relief and under contract because we may not enforce the March 10, 2020 draft language as a matter of

contract law absent the India client's express authority (especially after it repeatedly disputed the same language and thought it had more time relying upon its counsel) and absent a meeting of the minds on the disputed material term.

## Findings of Fact

1.      Servis One, Inc. d/b/a BSI Financial Services, Inc. is a mortgage servicer.

2.      BSI hired OKS Group, LLC to provide back-office data entry support in India under a Master Services Agreement.

3.      BSI told OKS it wanted to end the Master Services Agreement in late 2014.

4.      OKS did not like BSI's decision. It hired experienced lawyers at the Philadelphia office of Duane Morris LLP beginning in late 2014 or early 2015. OKS generally communicated with its lawyers through its Chief Executive Officer Vinit Khanna.

5.      OKS responded to BSI's decision by claiming BSI misappropriated OKS's trade secrets and breached the Master Services Agreement in three venues: (1) a 2015 arbitration proceeding against BSI with the American Arbitration Association in Philadelphia; (2) a 2015 civil action in India against BSI's India affiliate; and (3) a 2016 criminal complaint in India against BSI, its Chief Executive Officer Gagan Sharma, and Mr. Sharma's father, and other BSI employees including some in the United States.

6.      BSI hired experienced lawyers from the Philadelphia office of Morgan, Lewis & Bockius LLP beginning in January 2015.

7.      BSI asserted counterclaims against OKS and OKS CEO Khanna in the Philadelphia Arbitration for fraud allegedly caused by OKS over-billing BSI.

8.      OKS CEO Khanna told the Duane Morris Philadelphia trial lawyers in February 2018 of OKS hiring Indian Attorney Aditya Wadhwa "assisting ou[r] criminal action" in India

against BSI and retained to "look[] at [additional] avenues to put pressure on BSI, hence the engagement of Aditya and his team."[1]

9.      The arbitrators in Philadelphia scheduled arbitration for July 18, 2018.

10.    OKS CEO Khanna wanted to avoid arbitration.

11.    He met with OKS's Philadelphia attorneys the night before the arbitration hearing.

12.    BSI and OKS wanted to settle all three actions: the Arbitration, the Indian civil case, and the Indian criminal case.

13.    The parties seemingly agreed to a settlement the night before the arbitration subject to defining terms of their settlement including a general release of all past, present, and future claims of any type including the India civil and criminal actions.

14.    The July 18, 2018 Arbitration did not go forward based on the parties' settlement in principle.

15.    Attorneys Franco Corrado at Morgan Lewis representing BSI and Attorneys Steven Friedman and Rich Heaslip at Duane Morris representing OKS began drafting a settlement agreement.

16.    But then a week later OKS's India criminal Attorney Wadhwa advised OKS CEO Khanna and OKS Philadelphia lawyers OKS could not withdraw or settle the India criminal action and suggested the Indian disputes be handled "independently."[2]

17.    The parties did not sign documents resolving the Arbitration.

### *BSI sues to enforce the July 2018 oral understandings.*

18.    BSI eventually sued OKS in this Court in August 2019 seeking to enforce the parties' July 17, 2018 settlement of the Arbitration in principle, styled *Servis Once, Inc., d/b/a BSI*

*Financial Services, Inc., v. OKS Group, LLC*, No. 19-3654 ("*BSI v. OKS I*") assigned to Judge Baylson's calendar.

19.     The parties renewed their attempts to settle their dispute.

20.     Philadelphia attorney Kelly Bonner replaced Attorney Heaslip as the associate working with partner Attorney Friedman in representing OKS  around August 2019.

21.     The parties seemingly progressed December 2019 resulting in language in Section 2 of the draft settlement agreement requiring the parties to agree, among other things, "they shall not pursue, prosecute, or take any actions, direct or indirect, to encourage (or encourage the continuation of) any investigation, prosecution, or other proceeding regarding or relating to [the Indian criminal actions] and that they shall not take any actions, direct or indirect, that are contrary to effectuating the termination and quashing of the [Indian criminal actions] and any proceedings arising therefrom."[3]

22.     OKS CEO Khanna did not agree to Section 2 as drafted. He told his OKS Attorneys Friedman and Bonner throughout December 2019 he did not agree to Section 2 of the draft settlement agreement and the India actions could only be resolved with his Indian counsel.[4]

23.     Counsel picked up the effort to resolve the dispute after the 2019 year-end holidays.

24.     OKS India criminal Attorney Wadhwa told OKS CEO Khanna and its Philadelphia lawyers Friedman and Bonner on January 18, 2020 OKS could agree to the terms of a settlement agreement to withdraw the Indian civil action but would not agree to the withdrawal of the Indian criminal action unless the settlement agreement contained a caveat expressly clarifying the settlement will not amount to consent by OKS to withdraw or drop the criminal proceedings (the "Caveat").[5]

25.     Attorney Friedman told OKS CEO Khanna the Caveat "is not going to fly, so let's not waste time on it."[6]

26.     Attorney Friedman knew OKS India criminal Attorney Wadhwa's view on the Caveat but he did not share Attorney Wadhwa's view of India law "and we were not proceeding on that assumption, and we continued to try and get the agreement done in a way that would work and that I could reach agreeing with BSI to terminate the litigation."[7]

27.     Philadelphia Attorneys Friedman and Bonner communicated the Caveat to BSI Attorney Corrado.

28.     BSI Attorney Corrado rejected the Caveat. But he offered an alternative of removing Section 2 of the draft settlement agreement in its entirety and replace it with language allowing BSI to present any defenses in the Indian criminal action and to take action to terminate it and nothing in the agreement shall be construed as OKS's consent to the withdrawal or termination of the Indian criminal proceedings.[8]

29.     OKS Philadelphia Attorneys Friedman and Bonner told OKS CEO Khanna of BSI's unwillingness to agree to OKS's language and shared BSI's alternative, including telling CEO Khanna BSI "insists that the Settlement Agreement be contingent on the termination of the Indian criminal proceedings."[9]

30.     On February 3, 2020, OKS Philadelphia Attorneys Friedman and Bonner told OKS CEO Khanna of a March 17, 2020 settlement conference with Judge Strawbridge during which the parties "will be required to discuss whether the Settlement Agreement reached in the Arbitration can be saved and implemented" and "[w]e do not have the option to ignore this clear command from the Court." Attorneys Friedman and Bonner again communicated the proposed revised Section 2 containing the Caveat.[10]

31.     OKS CEO Khanna responded a week later telling OKS Attorneys Friedman and Bonner there is "[n]othing to discuss" and he "[w]ill touch base around Mar[ch] 10."[11]

32.     OKS Attorneys Friedman and Bonner immediately responded to their client's CEO and their client's India criminal Attorney Wadhwa by telling them postponing a discussion on the status of settlement until March 10 did not allow sufficient time to prepare for the March 17, 2020 settlement conference with Judge Strawbridge. Attorneys Friedman and Bonner asked to schedule a call to review the latest version of the draft settlement agreement with the Caveat.

33.     In the meantime—in late January and early February 2020—BSI's Attorney Corrado began emailing Attorney Friedman for a response to BSI's proposal (the proposed amended Section 2 with the Caveat).[12]

34.     OKS Philadelphia Attorney Bonner sent a calendar invitation to OKS CEO Khanna and OKS India criminal Attorney Wadhwa on February 19, 2020 setting a phone call with OKS Attorney Friedman for February 20, 2020.[13]

35.     Attorneys Friedman and Bonner spoke with their client's CEO Khanna on February 20, 2020 without OKS India criminal Attorney Wadhwa on the call:

   a.   Attorney Friedman explained the settlement agreement as proposed by BSI to delete Section 2 and replace it with a provision allowing BSI to take steps to withdraw the Indian criminal action, to delete the obligation of OKS to take steps to withdraw the Indian actions, and if BSI is unable to have the Indian criminal proceedings withdrawn the BSI at its discretion could terminate the agreement and OKS would not be paid the settlement among and the parties would return to the status quo ante as of the eve of the July 2018 Arbitration.

   b.   Attorney Friedman explained the terms of the settlement and OKS CEO Khanna responded by saying something like "that's fine."[14]

   c.   Attorney Bonner credibly testified she believed OKS CEO Khanna had then unequivocally accepted the terms of the settlement agreement.

    d.   Attorney Friedman credibly testified he discussed with OKS CEO Khanna the terms of the proposed settlement agreement on February 20, 2020 and he understood OKS CEO Khanna approved a finalized agreement.

    e.   OKS CEO Khanna had no recollection of the substance of the call including telling Attorney Friedman "that's fine" regarding the proposed settlement agreement.[15]

36.    OKS Philadelphia Attorney Friedman called BSI Attorney Corrado after the call with OKS CEO Khanna to confirm OKS CEO Khanna's acceptance of the latest draft of the proposed settlement agreement.[16]

37.    BSI Attorney Corrado emailed OKS Philadelphia Attorneys Friedman and Bonner a modified settlement agreement five days after the call attaching the modified written agreement removing Section 2, revising contingency language in the Payment provision, and added a Termination provision allowing BSI to void the settlement agreement at their sole discretion if it could not get the Indian criminal action dismissed, terminated, or concluded without further prosecution.[17]

38.    OKS Philadelphia Attorneys Friedman and Bonner promptly forwarded this revised draft to OKS CEO Khanna and OKS India criminal Attorney Wadhwa for their review.[18]

39.    OKS CEO Khanna received the February 25, 2020 email from its Philadelphia Attorneys Friedman and Bonner but did not look at the attached settlement agreement.[19]

40.    Attorneys Friedman and Bonner emailed OKS CEO Khanna and OKS India criminal Attorney Wadhwa three days later (February 28) asking for a status of their review of the revised settlement agreement. Attorneys Friedman and Bonner advised of obligations under Judge Strawbridge's settlement conference order, requested OKS CEO Khanna and Attorney Wadhwa respond as soon as possible noting OKS CEO Khanna "verbally acceded in principle, and confirm that you are comfortable with signing," and advised Judge Strawbridge "will not allow us to

postpone submitting our pre-conference memorandum, and further delay will only incur additional

costs."[20]

      41.    BSI did not adduce evidence why OKS's Philadelphia attorneys thought Judge

Strawbridge would not allow the parties an extension to file a mediation memorandum.

*OKS CEO Khanna disagrees with BSI proposed terms on March 1 and 2.*

      42.    OKS CEO Khanna wrote "with help from Aditya [Wadhwa]" to its OKS's

Philadelphia lawyers on March 1, 2020:

    a.   "We feel that permanence needs to be attached to the USA case";

    b.   "Therefore these cases need to unconditionally closed [sic]";

    c.   the Indian [criminal investigation] "can remain open";

    d.   "BSI retains the ability to attempt at getting the [Indian criminal investigation] closed";

    e.   "However the settlement will not amount to acquiescence of OKS";

    f.   "In the event BSI insists on a conditional closure of USA cases then it is clear that they seem to indicate that the USA cases are conditional on the Indian cases. Therefore they should be allowed to only reinitiate the arbitration after the Indian cases come to an end"; and,

    g.   "This is consistent with what we have been saying from the get go[.] And following up, with the same line of thought, Eastern District court case to be withdrawn and costs borne by us to be paid by them … settlement agreement is in total sync with our mutual mistake basis … and the India scenario as it is playing out is something we had been trying to bring to their attention before the settlement took place in the first place! The rest is ok and good to go."[21]

      43.    OKS Philadelphia Attorneys Friedman and Bonner responded to Mr. Khanna's

March 1 email on March 2. They clarified BSI expressly conditioned settlement of the United

States proceedings on the termination of the Indian proceedings, not on BSI obtaining the ability

to attempt to terminate the Indian proceedings; BSI will not agree to a settlement of the United

States proceedings until the Indian proceedings terminate; OKS cannot grant BSI the ability to attempt to terminate the Indian proceedings as consideration; there is no settlement and no payment and the parties return to the status quo ante without termination of the Indian proceedings; the current proposal is favorable to OKS; and they could not ask BSI to permanently withdraw the Arbitration and the civil action pending before Judge Baylson without the Indian proceedings being terminated and BSI will not agree to pay costs and fees. [22]

44.     OKS Philadelphia Attorneys Friedman and Bonner proposed going back to BSI Attorney Corrado with a modification to the settlement agreement requesting BSI agree to terminate the Arbitration and the civil action without prejudice to re-file if the Indian proceedings are not terminated.[23] OKS CEO Khanna responded at 1:39 pm the same day there is "no need for a call … unless you insist."[24] He quoted the portion of the Duane Morris March 2, 2020 email proposing they ask BSI to agree to terminate the Arbitration and civil action before Judge Baylson without prejudice to re-filing if the Indian proceedings did not terminate and responded: "This is highly desirable and acceptable to me." [25]

45.     OKS CEO Khanna again demanded BSI pay its attorney's fees and costs, rejecting OKS Philadelphia Attorneys' advice BSI would not pay fees and costs.

46.     OKS CEO Khanna told OKS's Philadelphia attorneys "we should ask for something" "on principle," and closed by saying "[s]o what if Settlement gets delayed a bit …"[26]

47.      Attorneys Bonner and Friedman responded to Mr. Khanna's March 2, 2020 1:39 pm email. Attorney Bonner explained to OKS CEO Khanna and its India criminal Attorney Wadhwa OKS could not recover attorney's fees and costs under the arbitration rules or Texas law (choice of law provision in the Master Services Agreement) and there is no basis to seek cost-shifting.

48.    OKS Philadelphia Attorney Bonner ended her email: "Please let us know if you have any questions or concerns, or wish to discuss tomorrow. Otherwise, we will respond to BSI's counsel, advising that we are amenable to the settlement agreement as drafted, with the exception of a request for clarification that BSI agree to terminate the Arbitration and the E.D. Pa. action without prejudice to re-filing the Arbitration and the E.D. Pa. action in the Indian proceedings are not terminated."[27]

49.    OKS CEO Khanna responded at 6:57 pm on March 2, 2020, with a copy to Attorney Wadhwa: "Keep it simple" and—quoting the language proposed by Attorneys Friedman and Bonner the settlement reflect BSI's agreement to terminate the Arbitration and E.D. of Pa. action without prejudice to re-file if the Indian proceedings are not terminated—responded "OK."[28]

50.    OKS Philadelphia Attorney Bonner sent BSI Attorney Corrado a marked-up settlement agreement with the proposed clarification on March 3, 2020.[29]

51.    BSI accepted the proposal on March 4, 2020.

52.    OKS Philadelphia Attorneys Friedman and Bonner forwarded to OKS CEO Khanna and OKS India criminal Attorney Wadhwa the revised settlement agreement on March 5, 2020.[30]

53.    OKS Philadelphia Attorney Bonner asked OKS CEO Khanna and Attorney Wadhwa to review the agreement and advise if they had additional questions or concerns regarding the settlement or otherwise she and Attorney Friedman believed the revised agreement reflects the parties' wishes.[31]

54.    OKS Philadelphia Attorney Bonner's conduct in still seeking OKS consent confirms she understood her client OKS had not agreed to final terms as yet.

55.    OKS CEO Khanna responded on March 6 confirming OKS could not then consent to these terms. He acknowledged the March 5, 2020 email and told OKS's attorneys he "will revert

12

on Monday [March 9] with questions [sic]" and asking "can we better define what is meant by the different actions in India" and "they should add exact details for both the Civil Case and Criminal complaint."[32]

56.     OKS had not authorized a settlement as of Friday, March 6, 2020.

*OKS did not authorize settlement as of March 9 and 10, 2020.*

57.     On Monday March 9, 2020, OKS Philadelphia Attorney Bonner responded to her client's CEO Khanna's March 6 email. Attorney Bonner quoted the language of the settlement agreement defining the Indian civil and criminal actions.[33]

58.     OKS CEO Khanna responded approximately thirty minutes later: "I will have this checked by Aditya [Attorney Wadhwa] and team**.**"[34]

59.     OKS Philadelphia Attorney Bonner responded minutes later asking OKS CEO Khanna for his comments and questions by "no later than tomorrow"—March 10, 2020—and reminded him the parties had a settlement conference scheduled with Judge Strawbridge.[35]

60.     OKS CEO Khanna responded he could not respond to her until Thursday, March 12 at the earliest because Tuesday, March 10, 2020 is a holiday in India and Attorney Wadhwa would respond on Thursday, March 12.[36]

61.     OKS Philadelphia Attorney Bonner then expressed frustration to her partner OKS Philadelphia Attorney Friedman about OKS CEO Khanna's and Attorney Wadhwa's failure to review the settlement agreement despite having it for over one week and frustration she would now have to ask BSI Attorney Corrado for an extension "based on finalizing the settlement agreement."[37]

62.     OKS Chief Financial Officer emailed its Philadelphia Attorneys Friedman and Bonner payment instructions on March 10, 2020 at their request.[38]

63.     But OKS Philadelphia Attorney Bonner knew she still did not have OKS's consent to the settlement terms.

64.     OKS CEO Khanna emailed Attorney Bonner on March 10, 2020 telling her he "managed to track down [Attorney Wadhwa]" and "[h]e has some concerns … which may be best alleviated by you send us [sic] a complete settlement agreement with full details on the India cases spelt out [sic] specifically. We will look at that and respond back by Thu[rsday] am," March 12.[39]

65.     OKS Philadelphia Attorneys never told OKS it could not have until March 12 to respond to the most recent language.

66.     OKS Philadelphia Attorney Bonner immediately responded by asking OKS CEO Khanna to explain what he meant by "full details of the India cases spelt out specifically" and advising him Judge Strawbridge's order required OKS to file a settlement memorandum by close of business on March 10, a "non-negotiable deadline."[40]

67.     Attorney Bonner never offered a reason why an extension for a settlement memorandum would be a non-negotiable deadline.

68.     OKS CEO Khanna responded to OKS Philadelphia Attorney Bonner: Attorney Wadhwa "cannot review anything until tomorrow at the earliest and reply most likely by Thu[rsday]"; the "renumbering of reference to the Indian Civil case confused me"; Attorney Wadhwa "repeatedly stated to me … there should be no expectations on us vis a vis the [Indian criminal investigation] … as attorneys to the Indian entity that filed the complaint, they are duty bound to ensure that they serve their clients in accordance with Indian Law and their attorney client legal obligations"; "if we try and act in a manner that is against the interests of OKS in India viz the [criminal investigation], they will challenge/disagree with the same … which goes back to the point … take out reference to India criminal cases"; and "Perhaps I am over reacting .. for the case

in hand viz E.D. Pa. … if there is NO reference to the [India criminal investigation] anywhere, then we are good to go."[41]

69.     OKS Philadelphia Attorney Bonner responded to OKS CEO Khanna, again explaining the terms of the settlement agreement, and telling him it is not possible to completely delete all references to the Indian criminal actions.[42]

70.     OKS CEO Khanna responded to Attorney Bonner explaining he would call her at 12:30 pm Eastern time on March 10.[43]

**OKS Philadelphia Attorneys approve the settlement on March 10 without OKS's approval.**

71.     At 10:55 AM on March 10, 2020, OKS Philadelphia Attorney Bonner emailed BSI Attorney Corrado authorizing him to e-sign and file a letter notifying Judge Baylson and Judge Strawbridge of the settlement which the parties were in the process of executing and would be filing a stipulation of dismissal.[44]

72.     Judge Baylson, relying on the "March 10, 2020 Letter from the Parties advising that this matter has settled," entered an Order cancelling the settlement conference with Judge Strawbridge.[45]

73.     The same day, March 10, 2020, the Clerk of the Court dismissed the action with prejudice, "it having been reported that the issues between the parties in the above action ha[ve] been settled …"[46]

74.     Neither party ever moved to modify or amend Judge Baylson's Order dismissing the action with prejudice even though both BSI counsel and OKS's Philadelphia Attorneys agreed the dismissal with prejudice is in error.[47]

75.    OKS Philadelphia Attorneys Bonner and Friedman knew of the risks in confirming the settlement without OKS approval: Attorney Bonner told Attorney Friedman on the morning of March 10, 2020 they "are jumping the gun" by notifying Judge Baylson of settlement.[48]

76.    OKS Philadelphia Attorney Friedman persisted notwithstanding the OKS CEO's lack of approval believing, "we have this thing done, let's get this letter into the Court" and his goal "was to make things happen, it benefitted a client."[49]

77.    Ms. Bonner ultimately concluded she did not think she and Attorney Friedman were "jumping the gun" by notifying Judge Baylson of a settlement and "if it turns out we're wrong, .. we could go back to the court."[50]

78.    OKS Philadelphia Attorney Friedman believed he could authorize the settlement because—in his view—it benefitted OKS regardless of a lack of OKS consent and his colleague Attorney Bonner's concern the lawyers were jumping the gun in telling Judge Baylson of a settlement.[51]

79.    OKS Philadelphia Attorney Bonner scheduled and left for a long-planned vacation in Florida on March 11, 2020 just before COVID-19 caused a nationwide shut down.

80.    BSI and its Philadelphia attorneys knew nothing of the lack of OKS consent as of March 11, 2020. For example, BSI's Philadelphia attorney sent Attorneys Friedman and Bonner a clean version of the March 10, 2020 settlement agreement for execution a second before midnight on March 12 providing in part:

> • Section 1. "**Dismissal of the Proceedings and the E.D. Pa. Proceedings.** Within ten (10) court days following the Effective Dave, [OKS] shall file a stipulation of dismissal with prejudice, with each Party to bear its own costs in the Arbitration. As part of [OKS's] stipulation of dismissal of the Arbitration, [BSI] shall agree to dismiss its Counterclaim. Within ten (10) court days following the Effective Date, [OKS India] shall file a stipulation/Application … for the withdrawal of the Indian Lawsuit … with prejudice, with each Party to bear its own costs in the Indian Lawsuit.

Within ten (10) court days following the Effective Date, [BSI] shall file a stipulation of dismissal without prejudice in the E.D. Pa. Proceedings, with each Party to bear its own costs in the E.D. Pa. Proceedings."

- Section 2: "**Payment**. Upon and subject to (A) the dismissal of the Proceedings, as indicated in Section 1, (B) the dismissal, termination, and/or conclusion of the Criminal Complaint and FIR without any further prosecution, appeal, plea, or conviction of, or the imposition of any fines, penalties, or sentences upon, [BSI] … or any principals, owners, or employees of the foregoing, to the satisfaction of [BSI], not to be unreasonably withheld, and (C) the actions detailed in Section 3(a) (the "Payment Date"), [BSI] shall pay or cause to be paid to [OKS] the sum of … $800,000 …

- Section 17. "**Termination**. If the Criminal Complaint and FIR are not dismissed, terminated, and/or concluded without any further prosecution, appeal, plea, or conviction, and/or the imposition of any fines, penalties, or sentences upon, [BSI], … then [BSI] … may void the Agreement in their sole discretion. If [BSI] … voids the settlement in this manner, then this Agreement will be vacated, rescinded, cancelled, and annulled, and the Parties will return to the *status quo ex ante*, as if they had not entered into this Agreement.[52]

81.    The March 10, 2020 draft settlement agreement did not include the Caveat as demanded by OKS CEO Khanna and OKS India criminal Attorney Wadhwa.

82.    OKS Philadelphia Attorney Bonner emailed OKS CEO Khanna a final settlement agreement upon her return from vacation on March 17, 2020 and asked him if he had any comments or questions "prior to execution."[53]

83.    OKS CEO Khanna responded the next day telling OKS Philadelphia attorneys Attorney Wadhwa "ha[s] not read this agreement as yet … [Attorney Wadhwa] will look at this and a formal acceptance of the final settlement should be possible by Friday if we get this issue on timing of share purchase sorted."[54]

84.     Then OKS CEO Khanna told OKS Philadelphia Attorney Bonner on March 20, 2020 of "Aditya [Attorney Wadhwa] has some concerns after reading the complete settlement as is."[55]

85.     OKS India criminal Attorney Wadhwa told his client OKS's CEO Khanna on March 23, 2020 of his surprise "to see that the draft settlement does not have the clause that I had insisted on … Please note that this caveat has to be inserted and I have said so on multiple occasions … and have the settlement agreement corrected immediately."[56]

86.     OKS CEO Khanna forwarded OKS India criminal Attorney Wadhwa's March 23, 2020 comments the next day to OKS Philadelphia Attorneys Friedman and Bonner "to follow through on what was agreed to."[57]

87.     BSI kept waiting. BSI Attorney Corrado told Attorneys Friedman and Bonner on April 8, 2020 he would request a conference with Judge Baylson if OKS did not sign the settlement agreement.[58]

88.     OKS CEO Khanna and OKS India criminal Attorney Wadhwa continued to contact its Philadelphia attorneys in late March requesting changes to the language of the settlement agreement and asking for clarification linking settlement payment to resolution of the Indian criminal investigation.[59]

89.     OKS Philadelphia Attorneys did not then tell their client about the impossibility of continued negotiations because the attorneys already agreed to dismiss the case.

90.     OKS Philadelphia Attorneys never told OKS they told the Court the parties finally settled their dispute.[60]

91.     BSI never offered evidence of OKS Philadelphia Attorneys ever telling OKS of advising Judge Baylson of a final settlement as of March 10, 2020.

92.    OKS Philadelphia Attorneys did not discuss the dismissal with prejudice issue with OKS CEO Khanna until sometime in May 2020, months after notifying Judge Baylson of the parties' settlement.[61]

93.    BSI never offered evidence OKS authorized the settlement as defined in the March 10, 2020 draft agreement as it now seeks to enforce before us.

94.    BSI never offered evidence of consent by OKS to the terms of the March 10, 2020 draft agreement either before March 10 or any time after.

95.    Neither party ever returned to Judge Baylson or sought to vacate the dismissal.

96.    OKS Philadelphia Attorneys terminated their representation of OKS on July 24, 2020.[62]

## Conclusions of Law

1.    Federal courts determining the scope of an attorney's authority to make a settlement offer apply state agency law.[63]

### *OKS did not expressly authorize settlement under the March 10 agreement.*

2.    Under Pennsylvania law, an attorney may not enter into a binding settlement agreement without the *express* authority of her client.[64]

3.    Express authority "must be the result of explicit instructions regarding settlement."[65]

4.    The "ordinary employment" of an attorney to represent a client in litigation does not confer implied or apparent authority to bind the client to a settlement; the attorney must have express authority to do so.[66]

5.    There is a rebuttable presumption a settlement entered into by an attorney is authorized by the client.[67] "The presumption is fundamental to the effective functioning of our

adversary system which is grounded, in part, upon two interrelated understandings: (1) that attorneys speak for their clients, both to the court and to opposing counsel, and (2) that attorney-client communications are privileged. Being able to rely upon counsels' representations of their clients' positions serves the salutary purpose of avoiding intrusion into the attorney-client relationship. Of course, there will be occasional situations where an attorney, by mistake or otherwise, will misrepresent a client's position. This can be easily determined and addressed by a fact-finding exercise, *once the client has come forward to deny the attorney's representations*."[68]

6.      If the presumption is challenged, we must find an attorney had express authority to settle.[69]

7.      If there is a dispute regarding an attorney's authority to settle a case, we may find express authority "where the client delayed in asserting the lack of authority, or where it is clear that the real motive for challenging a settlement involved a change of heart."[70]

8.      We may also find express authority where a client ratifies counsel's actions when he learns a settlement is reached and takes no action to repudiate counsel's authority to settle.[71]

9.      We may only find the settlement agreement valid if the attorney's express authority is proven where the validity of the agreement is disputed based on a lack of authority.[72]

10.      OKS Philadelphia Attorneys did not have OKS's express authority to settle the case with BSI on March 10, 2020.

11.      Although OKS CEO Khanna's testimony is partially incredible as to his recall of emails and agreements before March 2020 and his reliance upon OKS India criminal Attorney Wadhwa may be convenient, the undisputed documents confirm OKS CEO Khanna did not give OKS Philadelphia Attorneys express authority to settle the dispute with BSI.

12.     OKS viewed the repeatedly requested language concerning preserving its rights in the India criminal matter to be material to resolving the parties' disputes.

13.     OKS did not agree to the language addressing the treatment of the Indian criminal action as defined in the March 10, 2020 agreement approved only by OKS Philadelphia attorneys as either being in OKS's best interests regardless of its decisions or fairly sworn to be "jumping the gun."

14.     OKS Philadelphia Attorneys knew their client's CEO and India criminal attorney Wadhwa demanded certain language since the failed July 17, 2018 settlement terms. OKS Philadelphia Attorneys could not succeed in having BSI agree to OKS's mandated language.

15.     But it was not OKS Philadelphia Attorneys' decision to make.

16.     OKS Philadelphia Attorney Bonner credibly testified of her worry on March 10, 2020 she and Attorney Friedman may be "jumping the gun" when they communicated to BSI Attorney Corrado an agreement to the terms of the settlement agreement and when, later on March 10, 2020, they communicated to Judge Baylson and Judge Strawbridge the matter is resolved.

17.     OKS Philadelphia Attorney Friedman testified he "we have this thing done, let's get this letter into the Court" and his goal "was to make things happen, it benefitted a client."[73]

18.     OKS Philadelphia Attorney Friedman believed he settled the matter in OKS's best interest while discounting OKS CEO Khanna's insisting on the inclusion of terms he and Attorney Bonner earlier and repeatedly advised against. While we appreciate the clear frustration faced by OKS Philadelphia Attorneys Friedman and Bonner, the evidence overwhelmingly confirms OKS did not expressly authorize its Philadelphia attorneys to agree to the settlement agreement as drafted on March 10 and to advise the Court of the settlement.

19.     The evidence instead overwhelmingly confirms OKS asked for, and its Philadelphia Attorneys agreed, to more time to discuss and review the terms until at least March 12, 2020.

20.     OKS Philadelphia Attorneys decided to jump the gun on March 10, 2020 by agreeing to terms not authorized by their client who advised them to not agree to these same terms and then agree to a dismissal with prejudice.

21.     OKS Philadelphia Attorneys decided to settle rather than advise their client OKS of no settlement and to proceed to trial notwithstanding the OKS Philadelphia Attorneys' view of the unlikelihood of success at trial for OKS.

22.     But the decision to settle remains with OKS; it does not reside with attorneys hired to fulfill the informed and competent corporate client's decisions for whatever reason the attorneys may have.

### BSI and OKS never reached a contractually enforceable meeting of the minds.

23.     The elements of an enforceable contract under Pennsylvania law are an offer, acceptance, consideration or mutual meeting of the minds.[74] "[T]here must be a meeting of the minds; the very essence of an agreement is that the parties mutually assent to the same thing."[75]

24.     "The first element of the test for enforceability of a contract is whether both parties manifested an intention to be bound."[76]

25.     Under Pennsylvania law, we assess the intent a reasonable person would apprehend in considering the parties' behavior; our inquiry does not focus on the "inner, subjective intent of the parties."[77] "[A] a true and actual meeting of the minds in not necessary to form a contract."[78]

26.     Applying a reasonable person standard, BSI and OKS did not have a meeting of the minds based on the documentary and testimonial evidence.

27.     OKS did not intend to agree to the terms in the March 11 settlement agreement; OKS specifically required the inclusion of the "Caveat" demanded by its India criminal Attorney Wadhwa. The settlement agreement did not include the Caveat language.

---

[1] ECF No. 214, N.T. Nov. 14, 2023 at 286–87; Joint Exhibit B6.

[2] Joint Exhibit B19.

[3] Joint Exhibit B30.

[4] Joint Exhibit B41-B42.

[5] Joint Exhibit B51.

[6] ECF No. 215, N.T. Nov. 15, 2023 at 44–45.

[7] *Id.* at 45.

[8] Joint Exhibits B53, B55.

[9] Joint Exhibit B55; ECF No. 214, N.T. Nov. 14, 2023 at 63–65.

[10] Joint Exhibit B56.

[11] *Id.*

[12] Joint Exhibit B60.

[13] Joint Exhibit B59.

[14] ECF No. 213, N.T. Nov. 13, 2023 at 258.

[15] ECF No. 214, N.T. Nov. 14, 2023 at 224–25.

[16] Joint Exhibits B62, B145; ECF No. 213, N.T. Nov. 13, 2023 at 54–56; ECF No. 215, N.T. Nov. 15, 2023 at 59-60.

[17] Joint Exhibits B64, B65;  ECF No. 213, N.T. Nov. 13, 2023 at 56-58, 266–67.

[18] Joint Exhibit B66.

[19] ECF No. 214, N.T. Nov. 14, 2023 at 226.

[20] Joint Exhibit B71.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] Joint Exhibit B72.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Joint Exhibit B73.

[30] Joint Exhibit B79.

[31] *Id.*

[32] Joint Exhibit B85.

[33] *Id.*

[34] *Id.*

[35] Joint Exhibit B86.

[36] *Id.*

[37] *Id.*

[38] Joint Exhibit B87.

[39] Joint Exhibit B91.

[40] *Id.*

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] Joint Exhibit B92.

[45] *BSI v. OKS I*,  No. 19-3654, ECF No. 18.

[46] *Id.* at ECF No. 19.

[47] ECF No. 213, N.T. Nov. 13, 2023 at 98–101, 172–75, 185; ECF No. 214, N.T. Nov. 14, 2023 at 173–74; Joint Exhibit B112.

[48] ECF No. 213, N.T. Nov. 13, 2023 at 326–29; ECF No. 214, Nov. 14, 2023 at 145–51.

[49] ECF No. 215, N.T. Nov. 15, 2023 at 100–01.

[50] ECF No. 214, N.T. Nov. 14, 2023 at 151–52, 169.

[51] *Id.*

[52] Joint Exhibits B101, B102.

[53] Joint Exhibit B113.

[54] *Id.*

[55] *Id.*

[56] Joint Exhibit B115.

[57] *Id.*

[58] Joint Exhibit B121.

[59] Joint Exhibit B122.

[60] ECF No. 214, N.T. Nov. 14, 2023 at 144, 154, 163–64, 170–71.

[61] *Id.* at 170–71.

[62] Joint Exhibit B137.

[63] *Dugan v. O'Hara*, 125 F. Supp. 3d 527, 536 n. 7 (E.D. Pa. 2015) (citing *Tiernan v. Devoe*, 923 F.2d 1024, 1032–33 (3d Cir. 1991)).

[64] *Id.* at 536–37.

[65] *Vangjeli v. Banks*, --- F. Supp. 3d  ---, No. 19-1635, 2023 WL 2816834, at *4 (E.D. Pa. Apr. 5, 2023).

[66] *King v. Driscoll*, 296 A.3d 1178, 1184 (Pa. Super. Ct. 2023) (quoting *Baribault v. Zoning Hearing Bd. of Haverford Twp.*, 236 A.2d 112, 122 (Pa. Commw. Ct. 2020)).

[67] *Dugan*, 125 F. Supp. 3d at 537.

[68] *Vangjeli*, 2023 WL 2816834 at *4 (quoting *Rockey v. Big Spring Sch. Dist.*, 699 A.2d 1331, 1334 (Pa. Commw. Ct. 1997) (emphasis in original)).

[69] *Buchanan v. West Whiteland Twp.*, No. 08-462, 2009 WL 879038, at *2 (E.D. Pa. Mar. 31, 2009) (citing *Tiernan*, 923 F.2d at 1033).

[70] *Dugan,* 125 F. Supp. 3d at 537 (quoting *Transport Int'l Pool, Inc. v. Alternative Transp., Inc.*, No. 07-2895, 2008 WL 2550598, at * 5 (E.D. Pa. June 25, 2008)).

[71] *Id*.

[72] *King v. Driscoll*, --- A.3d ---, No. 1291 WDA 2022, 2023 WL 8462602, at *3 (Pa. Super. Ct. Dec. 7, 2023).

[73] ECF No. 215, N.T. Nov. 15, 2023 at 101.

[74] *Chilutti v. Uber Tech., Inc.* 300 A.3d 430, 443 (Pa. Super. Ct. 2023).

[75] *Id.* (quoting *Schreiber v. Olan Mills*, 627 A.2d 806, 808 (Pa. Super. Ct. 1993)).

[76] *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998)).

[77] *Id.* at 582 (citing *Ingrassia Constr. Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).

[78] *Id.*